United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA GARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KMART CORPORATION,<br><br>Defendant. / | No. C 11-02575 WHA<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND VACATING HEARINGS SCHEDULED FOR APRIL 19** |

## INTRODUCTION

In this proposed class action, defendant moves for summary judgment on all claims. For the reasons stated below, the motion is **DENIED**. The hearings scheduled for April 19 are **VACATED**.

## STATEMENT

Plaintiff Lisa Garvey claims that defendant Kmart Corporation violated California Wage Order 7-2001(14)(A) by not providing seats to its cashiers. Garvey pursues this PAGA claim as a class action, seeking to represent similarly situated Kmart employees in California. Kmart has approximately 100 retail stores in California. Garvey worked as a seasonal checkout service associate (cashier) in the Tulare Kmart store for approximately two months in 2010.

Kmart moves for summary judgment on all claims. This order follows full briefing. The parties have stipulated that Garvey will file her motion for class certification after a ruling on this motion for summary judgment.

**ANALYSIS**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

California Labor Code Section 1198 prohibits an employer from employing any individual under labor conditions prohibited by an applicable wage order, including California Industrial Welfare Commission Wage Order 7-2001. IWC Wage Order 7-2001 Section 14 states:

> 14. Seats
>
> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

CAL. CODE REGS. TIT. 8 § 11070(14). California's Private Attorneys General Act of 2004 permits an "aggrieved employee" to institute an action "on behalf of himself or herself and other current or former employees" to collect civil penalties for a violation of any provision of the California Labor Code. CAL. LAB. CODE § 2699(a).

**1. SECTION 14 DOES NOT EXCLUDE RETAIL SALESPERSONS FROM PROTECTION.**

As indicated in the plain language of the regulation, Section 14(A) covers *all* position where the nature of the work reasonably permits the use of seats, regardless of whether the employee is classified as "retail salesperson." Kmart, however, argues that contrary to its plain language, Section 14(A) was intended to specifically exclude "retail salespersons in the

2

mercantile industry" like Garvey. This order disagrees. The plain language of the regulation does not restrict aggrieved employees to non-salespersons; instead, it expressly covers "*all working employees . . . when the nature of the work reasonably permits the use of seats.*"

In support of its interpretation, Kmart cites a 1986 advisory letter issued by then-Chief Deputy Labor Commissioner, stating:

> [Section 14] was originally established to cover situations where the work is usually performed in a sitting position with machinery, tools or other equipment. It was not intended to cover those positions where the duties require employees to be on their feet, *such as sales persons in the mercantile industry*.
>
> Historically and traditionally, sales persons have been expected to be in a position to greet customers, move freely throughout the store to answer questions and assist customers in their purchases.

(Dkt. No. 52 [Request for Judicial Notice] Exh. D) (emphasis added). This statement was affirmed shortly thereafter by the then-executive officer of the IWC, who wrote (RJN Exh. F):

> Section 14(A) of Order 7-80 specifically states that "all working employees shall be provided with suitable seats when the 'nature of the work' reasonably permits the use of seat," the key being the "nature of the work." The nature of work for salespersons is such that it requires them to be mobile and as [the Chief Deputy Labor Commissioner] states, to be in a position to greet customers and move freely throughout the store.

Kmart argues that these statements support its interpretation that Section 14(A) specifically excludes "retail salespersons." Kmart's interpretation is unpersuasive. There is no inconsistency between the above-quoted statements and the plain language of the Section 14. The agencies' statements do not carve out an exception for "retail salespersons." Instead, they merely note that in the late 1980s, when the statements were issued, the nature of the work for salespersons did not reasonably permit the use of seats *because* salespersons "have been expected to be in a position to greet customers, move freely throughout the store to answer questions and assist customers in their purchases." A quarter of a century later, the job description for "retail salespersons" may have changed and may not be uniform among all retailers today. Thus, there is no exception in Section 14 for employees labeled as "retail salespersons." The plain language

3

of the statute, "all working employees . . . when the nature of the work reasonably permits," controls.

### 2. SECTION 14 DOES NOT REQUIRE EMPLOYEES TO MAKE A REQUEST BEFORE SEATS ARE PROVIDED.

California state courts have interpreted the word "provide" in the Labor Code to mean "to supply or make available." *See, e.g.*, *In re Lamps Plus Overtime Cases*, 125 Cal. Rptr. 3d 590, 602 (Cal. App. 2011). Not satisfied with this definition, Kmart requests that an additional requirement be tacked onto the word "provide." It argues that the phrase "[a]ll working employees shall be provided with suitable seats" should be interpreted to mean that an employee must request a seat *before* an employer is required to supply or make available seating. Thus, under Kmart's interpretation, Garvey would not be an aggrieved party because she never requested a seat.

This order disagrees with Kmart's interpretation that a request is needed before the employer has an affirmative duty to provide seating. Nothing in the language of Section 14 suggests such a requirement. Instead, the regulation states that all working employees *shall* be provided with suitable seats. This mandatory language suggests the employer has an affirmative obligation to provide seats before any condition, such as a request by the employee. This understanding was recently adopted by another district court. *See Echavez v. Abercrombie & Fitch Co. Inc., et al.*, Case No. CV-11-9754 GAF (C.D. Cal. Mar. 12, 2012) (Feess, J.); *but see Green v. Bank of America*, Case No. 11-CV-04571 (C.D. Cal. Aug. 10, 2011) (Real, J.)

The meal-and-rest-break decisions cited by Kmart only stand for the proposition that "provide" has been interpreted to mean that "employers need not ensure meal breaks are actually taken, but need only make them available." *See, e.g., Brinker Rest. Corp v. Superior Court*, 80 Cal. Rptr. 3d 781, 787 (Cal. App. 2008). This is consistent with the above interpretation that an employer still has an affirmative obligation to supply or make available seating. Moreover, many other labor code regulations under the same work order would be made nonsensical if "shall be provided" were interpreted to "make available *only upon request*," such as providing mandatory uniforms, providing shelter at night for eating meals, and providing change rooms for occupations that require a change of clothing. As a matter of statutory interpretation, in order to

4

interpret the phrase "shall be provided" consistently across the different labor code regulations, the phrase should not include the condition that the employee must first make a request. To sum up, there is no requirement that an employee request seating in order for Section 14 to apply.

There is a genuine dispute of material fact as to whether Kmart had a policy of making seats available to its cashiers. While it may be true that Kmart had a written policy stating that requests for seats should be honored, none of the Kmart managers (other than Kmart's corporate designee) deposed knew about this policy before this litigation (Richardson Dep. at 22–24; Blake Dep. at 35–36, 43; Johnson Dep. at 66). None of the cashiers who submitted their declaration was told about this policy. In fact, Garvey has submitted evidence that requests for seats were denied by managers (*see, e.g.*, Righetti Decl. Exh. 3a ¶¶ 4, 5).

### 3. DISPUTED AS TO WHETHER THE WORK OF KMART CASHIERS REASONABLY PERMITTED SEATS.

There are genuine disputes of material fact as to whether the work of Kmart cashiers reasonably permitted the use of seats. Unsurprisingly, there is evidence that manning the cash register was a cashier's primary job and cashiers were expected to be there unless they were putting away returns (Blake Dep. at 22–23). A district manager estimated that on the low end, approximately 90 percent of a cashier's work time would typically be spent behind the cash register (Richardson Dep. at 18). A store manager estimated that approximately 70 percent of a cashier's time was spent behind the register (Blake Dep. at 23–24).

While it is undisputed that the cashier position required some movement even while behind the cash register — such as stretching, bending, scanning, processing transactions, removing security tags, bagging, etc. — it *is* disputed whether these movements could have been efficiently performed while seated. In addition to her own declaration, Garvey submits the declarations of fourteen other cashiers (who have worked across Kmart stores in California) who all declare that their primary job functions could have been completed while seated (*see, e.g.*, Righetti Decl. Exhs. 3a–n, Exh. 10).

Kmart objects to all these declarations on the ground that they are "unfounded, speculative and cookie-cutter assertions." It is true that these cashiers did not have firsthand experience about operating their cashier's station while seated. But that is because they were not

5

offered seats by Kmart. This does not make their declarations unduly speculative. The cashiers all had firsthand knowledge about their job functions and could reasonably predict how sitting would have affected their performance.

Garvey also submits the declaration of an expert, Dr. Steven Johnson, a professional engineer, certified professional ergonomist, and professor at the University of Arkansas, who opined that the essential functions of a cashier reasonably permit the use of a seat if the cash register station undergoes minor modifications (Johnson Decl. ¶ 20). For example, he opined that these minor modifications would include relocating the storage area underneath a register to allow for leg room, adding an adjustable seat and footrest, and moving shelves closer to the cashier (*Id.* ¶ 31–36). He offered the following opinion (*Id.* ¶ 37):

> From my analysis of the tasks performed at the cash register counters, it is evident that the primary tasks can be performed using a seat with modifications. This could occur with no reduction in the efficiency of the tasks performed. For those task that cannot easily be performed sitting (e.g., due to the size, weight, or awkwardness of the item) the cashier would simply stand to perform the task. From my observations, all of the horizontal reaches would be within reach with an appropriately designed counter (e.g., providing legal room under the counter). Twisting would not be extensive due to the use of a swivel stool and the geometry of the work area.

In opposition, Kmart argues that these modifications would be too extensive to be reasonable. This is an argument for trial. Viewed in the light most favorable to Garvey, this order cannot hold that these modifications would be unreasonable as a matter of law. Kmart also argues that Dr. Johnson's opinion is unreliable because he relied on photographs, shop drawings, and measurements instead of visiting the California stores. Although Kmart may be correct that it is better practice to conduct an onsite visit, there is no evidence that relying on photographs, shop drawings, and measurements is unreliable methodology under Rule 702 (Dkt. No. 66).

Kmart has its own expert who opined that based on a videotape analysis of cashiers in one Kmart store where stools were placed into the cashier's station, providing seats for cashiers would reduce speed and efficiency. These conclusions, however, remain disputed and cannot serve the basis for granting summary judgment.

6

Kmart also argues that it would be unreasonable to provide seats because it has a legitimate business purpose in making its cashiers project a "ready to serve" image by standing. Its own store manager, however, testified that a Kmart cashier can provide a friendly and courteous image while seated (Blake Dep. at 67–68). Moreover, it may be reasonable for a store to tolerate some loss of customer service or efficacy by providing seats to its cashiers. It is inappropriate, on these facts, to decide how much loss of customer service is or is not reasonable as a matter of law.

To sum up, there are genuine disputes of material fact as to whether the nature of a Kmart cashier's work reasonably permits the use of a seat. This precludes summary judgment.

## CONCLUSION

For the reasons stated above, the motion for summary judgment is **DENIED**. The hearings scheduled for April 19 are **VACATED**. Defendant's motion to expedite briefing is **DENIED AS MOOT** (Dkt. No. 62). Defendant shall re-notice or withdraw its *Daubert* motions (Dkt. Nos. 63, 66).

**IT IS SO ORDERED.**

Dated: April 12, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7