United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA GARVEY, individually and on behalf of others similarly situated cashiers in the Tulare Kmart store,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KMART CORPORATION,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. C 11-02575 WHA<br><br>**ORDER CERTIFYING CLASS, APPOINTING CLASS COUNSEL, AND APPOINTING CLASS REPRESENTATIVE** |

**INTRODUCTION**

In this proposed class action involving seats for Kmart cashiers, plaintiff moves for class certification. For the reasons stated below, the motion is **GRANTED IN PART**. This order certifies the following class under Rule 23(b)(3): All persons who, during the applicable statute of limitations, were employed as a Cashier for defendant at its Tulare Kmart store and were not provided with a seat while working the front-end cash registers.

**STATEMENT**

The background of this action has been described in a prior order (Dkt. No. 68). To sum up, plaintiff Lisa Garvey alleges that defendant Kmart Corporation violated California Wage Order 7-2001(14) by not providing seats to its cashiers. Garvey pursues her Private Attorney General Act claim as a class action, seeking to represent other Kmart cashiers in California.

Kmart has approximately 100 retail stores in California. Garvey worked as a seasonal cashier in the Tulare Kmart store for approximately two months in 2010.

Section 14 of California's Industrial Welfare Commission Wage Order 7-2001 states:

> 14. Seats
>
> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

CAL. CODE REGS. TIT. 8 § 11070(14). California's Private Attorneys General Act of 2004 permits an "aggrieved employee" to institute an action "on behalf of himself or herself and other current or former employees" to collect civil penalties for a violation of any provision of the California Labor Code. CAL. LAB. CODE § 2699(a).

Garvey moves to certify the following class under Rule 23(b)(3): "All persons who, during the applicable statute of limitations [one year], were employed as a Cashier for defendants at their Kmart retail stores (including Big Kmart and Kmart Supercenter) in the State of California and were not provided with a seat while working the front-end cash registers" (Br. 3).

**ANALYSIS**

Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity of the class; (2) there are common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the representative parties can fairly and adequately protect the interests of the class. In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists. *Xavier v. Philip Morris USA Inc.*, No. C 3:10-cv-02067 (N.D. Cal. April 18, 2011) (Alsup, J.). A class can be certified under Rule 23(b)(3) if "questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1. ASCERTAINABILITY.**

**A. Identifying Cashiers Who Worked Behind the Register.**

Garvey has identified an objective and reliable method for obtaining the names of Kmart cashiers working behind the register during the class period at the Tulare Kmart store. Specifically, Kmart's "point of sale" record reasonably identifies which particular cashier worked at a register and for how long each pay period in the Tulare store. The "point of sale" record is a log of when an unique password, which was not used by more than one cashier at the same store during the same time period, was used on a particular register (Grabau Dep. at 114). This information, coupled with employment and scheduling records, can produce a reliable list of Kmart cashiers who worked at registers during the class period at the Tulare Kmart store (*see* Grabau Dep. at 101–02).

Kmart argues that there are flaws with using the "point of sale" record. *First*, there are instances where employees switched passwords with each other if one password malfunctioned (De Ruyter Decl. ¶ 14). *Second*, training passwords were used by multiple trainees (Aparicio Decl. ¶¶ 6, 9; Chavez Decl. ¶9). *Third*, the record does not account for time-periods where the cashier left his or her station temporarily to perform other duties but did not log off the register (Grabau Dep. at 103). *Lastly*, plaintiff Garvey agreed that she would not be using the "point of sale data" at the class certification stage (Dkt. No. 40 at 15; Dkt No. 44). Kmart's arguments are unpersuasive.

At this stage, Garvey does not need to submit electronic records with Kmart's suggested level of precision, such as accounting for times of malfunctioning equipment or accounting for instances of training, in order to reasonably ascertain class members. Instead, Garvey only has the burden to offer a record that is objective and reasonably reliable for the Tulare Kmart store. The point of sale records and electronic scheduling reasonably reflects whether a cashier spent the majority of his or her shift working at a register at the Tulare Kmart store. Also, Garvey has

not used "point of sale data" at the class certification stage in violation of her agreement with Kmart. Instead, Garvey has only pointed out that the record exists and can be used to identify class members after the class is certified.

### B. Cashiers Who Were Not Provided With Seating.

Garvey has limited her proposed class to cashiers "who were not provided with a seat while working the front-end cash registers" (Br. 3). Kmart argues that Garvey cannot met her burden of identifying which cashiers were not provided with a seat. At this stage, Garvey does not need to ascertain whether each individual cashier was provided with a seat because there is substantial evidence that Kmart had *a uniform policy* of not providing seats to its cashiers at its Tulare Kmart store.

"Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012). Even if there is an express policy in compliance with labor regulations, "an employer may not undermine a formal policy [that is in compliance with labor regulations] by pressuring employees to perform their duties in ways that [violate the regulations]." *Id.* at 1040. Plaintiff needs to offer "substantial evidence" of the company-wide policy or practice that violated regulations. *Id.* at 1051–52.

Here, there is substantial evidence that Kmart had a common policy of not providing seats to its cashiers in its Tulare Kmart store. Indeed, Kmart and its own witnesses have repeatedly argued that they did not believe that it was good business for cashiers to have seats (Opp. at 8; Johnson Dep. at 14–15, 53–54, Ortega Decl. ¶ 22.). Aimee Grabau, Kmart's director of human resources in California, testified: "We don't provide seats for our associates up at the front and we don't certainly encourage that our associates are using seats up at the front to perform their job" (Grabau Dep. at 42). Kmart's job description for cashiers stated that the "physical demands" for the position would require "constant" standing and "never" sitting (Righetti Decl. Exh. 5). There is also evidence that requests for seats by cashiers were denied (*see, e.g.*, Dkt. No. 57-3a at ¶¶ 4, 5; Dkt. No. 57-3b at ¶ 4).

4

Kmart argues that it had a policy, allegedly communicated to all California store managers, that its cashiers could receive seating upon request (Grabau Dep. at 128–29). While this may be true, there is little evidence showing that this purported policy was actually told to cashiers in the Tulare store. At least some Kmart cashiers did not know seats were available (*see, e.g.*, Dkt. No. 57-3a at ¶¶ 4, 5; Dkt. No. 57-3b at ¶ 4). And three Kmart managers did not know about this policy during the class period (Dkt. No. 57-6 at 10–11; Dkt. No. 57-7 at 13–15, Dkt. No. 57-8 at 15). Plaintiff Garvey, who worked in the Tulare store, did not know about this policy. At least for the Tulare store, at this stage, there is an ascertainable class.

### 2. RULE 23(a)(1): NUMEROSITY.

After oral arguments, Garvey submitted a statement that there are 71 individuals who were employed as cashiers at the Kmart Tulare store during the class period. This order finds that the number of class members is so numerous that joiner would be impracticable.

### 3. RULE 23(a)(2) AND (3): COMMONALITY AND TYPICALITY; AND RULE 23(b)(3).

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 n.5 (2011). The class members' "claims must depend upon a common contention. . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

The common issue is whether Kmart's policy of not providing seats to its cashiers in the Tulare store violates Section 14 because the nature of a Kmart cashier's work reasonably permits the use of seats. There is substantial evidence that Kmart cashiers spent the majority of their

5

time working behind registers during the class period (*see, e.g.,* Righetti Decl. Exh. 5; Blake Dep. at 23; Richardson Dep. at 16). It is undisputed that common tasks for every Kmart cashier working at his or her register included (1) scanning items, (2) placing unwanted items in a bin below the cash register or bringing it to the customer service desk, (3) removing security devices that may be on an item, (4) watching for theft by looking at the bottom of customers' carts, (5) placing items into a plastic bag, and (6) handing bags to customers or placing loaded bags on a counter (Opp. at 4–5).

A trier of fact could determine whether these common tasks could reasonably be performed while seated, and such a determination would apply to all Kmart cashiers at its Tulare store. The controversy is appropriate for class treatment because Kmart had a common policy of not providing seats. A class action is superior to other methods for fairly and efficiently adjudicating the controversy because it would not be cost-effective for each Kmart cashiers to bring individual lawsuits, given that each cashier only has a relatively small financial interest. Plaintiff Garvey's claim is typical of the class claim because she was a Kmart cashier at the Tulare store, performed tasks common to Kmart cashiers, and was not provided with a seat.

Kmart counters by arguing that there are too many individual inquiries: (1) the variation in physical stature of each cashier, (2) the variation in cash-register configurations, (3) the time spent at the front-end cash register versus performing other duties in the store, and (4) the amount of damages due each cashier if liability is found. This order finds that none of these minor variances are sufficient to defeat class certification when Kmart cashiers spent the majority of their time performing common tasks at their registers, and Kmart has a common policy of not providing seats.

*First*, Kmart argues that each cashier's physical stature will be relevant in determining whether the nature of the work permits seating for any particular cashier. This argument is unpersuasive. One can always dream up a scenario where an employee, due to his or her exceptional situation, will not benefit from a particular labor regulation. This type of general speculation alone cannot defeat class certification; tangible and plausible examples of individual issues need to be given. Here, Kmart offers only one example of how a cashier's physical stature

6

will affect whether the nature of a Kmart cashier's work permits seating: ergonomic research indicates that women should not handle more than 6.6 lbs while seated and men should not handle more than 11 lbs while seated (Fernandez ¶ 28). This example is unpersuasive. Even with suitable seating, Kmart cashier would not be forced to sit while handling large and heavy items. Cashiers would be able to stand if they thought they needed more leverage to lift heavier items.[1]

    Kmart argues that there are "at least five different configurations for the checkout register areas in the nearly 100 California Kmart stores," and the configuration would affect whether there could be suitable seating. This argument is unpersuasive at this stage. For the purposes of this order, only cashiers working in the Tulare Kmart store will be in the certified class. The Tulare store likely had the same or very similar configurations at all registers; there is no evidence to the contrary.

    Kmart argues that there are individual issues of how long each cashier spent behind his or her register because cashiers can be away from their register for the majority of a shift, week, or pay period. Kmart is correct that there is likely to be variation as to how long each cashier spent behind a register for any given shift. However, these time-periods not behind a register were the exceptions, and not the norm, for Kmart cashiers during the class period. The normal expectation was for Kmart cashiers to work behind registers (*see, e.g.*, Righetti Decl. Exh. 5; Blake Dep. at 23; Richardson Dep. at 16). When deciding the controversy of whether "the nature of the work" permits suitable seating, it is predominately more important for the trier of fact to consider the common tasks performed by all Kmart cashiers while behind the register, where cashiers spent the *majority* of their working hours during the class period, instead of time away from the register.

---

[1] Kmart's ergonomic expert opines that some cashiers would be too "lazy" to follow instructions to stand to lift heavier items (Fernandez ¶ 21). This testimony is stricken because it is beyond the scope of the ergonomic expert's expertise.

The remainder of the expert report offers only general principles that age, gender, and ethnicity affect a person's physical strength and range of motion; and that physical strength and range of motion would affect the ergonomics of physical labor. These general principles, without tying these opinions to tangible examples for Kmart cashiers, are insufficient to show that individual inquiries outweigh the predominate issue of whether the common duties for all Kmart cashiers permits seating.

7

Lastly, Kmart argues that there are individual issues about the amount of statutory damages due if liability is found. A violation of Section 14 may subject an employer to a penalty of up to $100 per person, per pay period, for the initial violation, and $200 per person, per pay period, for each subsequent violation. CAL. LAB. CODE § 2699(f)(2). Kmart argues that only individual inquiries can determine whether any cashier logged enough time behind a register, or actually requested and received a seat, for each pay period. This argument is unpersuasive. As discussed, Kmart had a common policy of not providing seats and the question of whether this policy violated Section 14(A) is amenable to class adjudication. California labor law is clear that "[a]s a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1022 (2012); *see also Hilao v. Estate of Marcos*, 103 F.3d 767, 782 (9th Cir. 1996) (approving the use of a statistical sample of the class claims to determine damages). So too here. The issue of damages can arguably be resolved through sampling after the common issue of liability is resolved.

**4. RULE 23(a)(4): ADEQUACY OF CLASS COUNSEL.**

Rule 23(a)(4) requires that the representative plaintiff and class counsel fairly and adequately represent the interests of the class. Plaintiff Garvey's typicality has already been discussed. Proposed class counsel, Attorneys James Clapp, Kevin McInerney, and Matthew Righetti, have many years of experience prosecuting California wage and hour class actions (Clapp Decl. ¶ 2, McInerney Decl. ¶¶ 2–5, Righetti Decl. ¶¶ 2–6). They will fairly and adequate represent the interests of the class.

Kmart argues that class counsel is inadequate because this action is just one of many "suitable-seating" suits (allegedly 15 in total) they concocted against California retailers, and that counsel afterward found a patsy plaintiff against Kmart. In support, Kmart cites the deposition of Miles Locker, plaintiff's purported expert witness on the history of California's labor law, who stated that he, Attorney Righetti, and

> some other attorneys . . . were having a discussion just batting around some ideas about, you know, different areas of law that, you know, might be developed further, and they invited me to this

8

> discussion for any ideas that I might have. . . . I said that, . . . one of the provisions of the IWC orders that [Department of Labor Standards Enforcement] never had the resources to really enforce were the seating requirements, and that I thought now with the . . . existence of PAGA, that it would be an area that could be enforced by private litigants

(Locker Dep. at 22–29). Kmart also cites the deposition of plaintiff Lisa Garvey, who testified that she only contemplated filing suit against Kmart *after* Attorney Righetti sent her a letter (Garvey Dep. at 14–17). Without more, this evidence is insufficient to show that class counsel constructed this lawsuit before they had a plaintiff, are the driving force behind the lawsuit, and only have a puppet plaintiff. For example, there is no evidence that plaintiff Garvey is unfamiliar with details of this lawsuit. And while neither side gives detailed information about Attorney Righetti's solicitation of plaintiff Garvey (nor appends the letter/newsletter received by Garvey), Kmart does not argue that Attorney Righetti violated California Rule of Professional Conduct Rule 1-400(B), which prohibits solicitation delivered in person or by telephone. Attorney Righetti submits his declaration that the newsletter received by plaintiff Garvey was in compliance with Rule 1-400 (Righetti Reply Decl. ¶ 3). To sum up, there is insufficient evidence showing that class counsel has acted improperly.

### 5. CLASS CERTIFICATION FOR ONLY CASHIERS WORKING IN THE TULARE STORE AND NOT STATEWIDE.

This order only certifies a class comprised of cashiers working in the Tulare Kmart store, and not statewide for all California Kmarts, as plaintiff had requested. As discussed with counsel at the hearing, there are possible problems of manageability concerning statewide certification. This certified class of cashiers working in the Tulare Kmart store will be tried to completion, through trial and subject to decertification if warranted. This will illuminate the extent to which there are genuine individual issues that preclude class certification on a statewide basis. Therefore, this order holds in abeyance the extent, if at all, any other Kmart stores will be certified.

9

**CONCLUSION**

For the reasons stated, Garvey's motion for class certification is **GRANTED IN PART**. This order certifies the following class under Rule 23(b)(3) to pursue a claim for violation of Wage Order 7-2001(14) against Kmart:

> All persons who, during the applicable statute of limitations, were employed as a Cashier for defendant at its Tulare Kmart store and were not provided with a seat while working the front-end cash registers.

This class includes, without limitation, the 71 individuals identified in plaintiff's list of Tulare Kmart cashiers during the class period (Dkt. No. 89). The class definition shall apply for all purposes, including settlement. This order **APPOINTS** Lisa Garvey as class representative. Pursuant to Rule 23(g), this order **APPOINTS** Attorneys James Clapp, Kevin McInerney, and Matthew Righetti as class counsel.

Counsel shall have until **JULY 31** to vet the names listed in plaintiff's statement (Dkt. No. 89) as being included in the class and to advise the Court of any and all corrections. Also by **JULY 31**, counsel shall submit an agreed-on form of class notice and plan of dissemination and time table.

**IT IS SO ORDERED.**

Dated: July 18, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE