JEFFREY D. WOHL (Cal. State Bar No. 096838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KMART CORPORATION,<br><br>Defendant. | No. 11-02575-WHA<br><br>**COMPENDIUM OF DAY IN THE LIFE DECLARATIONS IN OPPOSITION TO PLAINTIFF COLETTE DELBRIDGE'S MOTION FOR CLASS CERTIFICATION**<br><br>**EXHIBITS 1-15**<br><br>Date: Thursday, June 6, 2013<br>Time: 8:00 a.m.<br>Courtroom: 8, 19th Flr., 450 Golden Gate Ave., San Francisco<br>Judge: Hon. William H. Alsup<br><br>Trial Date: September 23, 2013 |

| Tab | Document |
|---|---|
| 1. | Balandran, Sierra |
| 2. | Brennan, Virginia |
| 3. | Carson, Shari |
| 4. | Clabough, Peggy |
| 5. | Galloway, Stephanie |
| 6. | Hahn, Linda |
| 7. | Hurtado, Christian |
| 8. | Judkins, Patricia |
| 9. | Labre, Lorysa |
| 10. | Lawrence, Sarah |
| 11. | Mergele, Leslye |
| 12. | Miranda, Lisa |
| 13. | Sharpe, Aryana |
| 14. | Walsh, Danielle |
| 15. | Warren, Kristine |

# EXHIBIT 1

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF SIERRA BALANDRAN** |

I, Sierra Balandran, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I sometimes also perform work on the sales floor. I began working at Kmart in October, 2012, when I was hired as a Checkout Service Associate. I work at Kmart's Fontana location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate, I am responsible for providing excellent customer service, ringing up customers' purchases, helping customers sign up for credit cards, and helping customers with layaway payments. When I am not assisting customers, I perform other tasks, such as cleaning the register area, organizing shelves, and performing price checks. On a given shift I spend about eighty percent of my time at the register, assisting customers, and the other twenty percent of my time doing other tasks.

3. Every checkout transaction requires me to move in a variety of ways. Each shift I walk around the counter to assist customers. For example, whenever I have a customer who is in a wheelchair, I assist him or her by walking around the counter and unloading his or her merchandise onto the merchandise counter. Once I unload the merchandise, I walk back into the register area so that I can scan and bag the items. Once the items are bagged, I help to put all the bags directly into the customer's cart.

4. I also walk around the counter when customers purchase larger items, which customers often do. When a customer has a large item, I generally exit my register area and walk to the customer's cart so that the customer does not need to lift the item. I may have to lift the item from the cart or move the item so that I can find the barcode and scan it with the wireless scanner. The heaviest item I feel comfortable lifting is generally between 10 to 15 pounds. In some instances, when the customer has a large item, the customer may also tilt the item towards me. Instead of walking around to scan the item, I then reach across the counter to scan it.

5. I also reach for merchandise when customers place the items they wish to purchase on the counter. I have to reach most often when the customer leaves the merchandise on the end of the counter and does not push it towards me. Working at the register also requires me to twist my body frequently.

LEGAL_US_W # 74650487.1

With each transaction, I twist my body because I grab an item, scan the item, put the item in a bag, and continue repeating this process. Bending is also something I do regularly. If a customer puts something at the bottom of the cart, such as a case of water, I must bend down to scan it after walking around the counter to the cart.

6.      Even when assisting customers at the front-end registers, there are times when I exit my register area and go to other parts of the store. For example, when I work the morning shifts, if I need a price check, I sometimes go to where the item is located in the store myself in order to look up the price for the customer.

7.      When there are no customers waiting in my line, I am supposed to perform other tasks, rather than simply stand around doing nothing. When there are no customers in my line, I look around the store to see if there are any customers walking towards my counter. If I see a customer who wishes to purchase merchandise, I invite that person to my register. If no customers wish to checkout, I start performing other duties right away. Each register has its own aisle and I am responsible for restocking the shelves and organizing the merchandise along my aisle. I also need to keep my register and the area around my register clean. At my store, we keep cleaning supplies underneath the registers. When I need to get these items I bend down to grab them. We also keep receipt paper underneath the registers. Every time I need to replace the receipt paper, I must bend down to grab it.

8.      When I am facing the cash register, the merchandise counter is next to me. Connected to the merchandise counter is the debit machine that customers use during transactions, the scanner, and the demagnetizer. At the end of this long counter, there are bags hanging on hooks for customers' merchandise. Facing the register, there is a counter behind me for bags. My store has eleven front-end checkstands.

9.      I do not feel that I could perform my job duties as a cashier while seated. My duties require me to move constantly; therefore, sitting would make performing my tasks very difficult. A seat would get in my way and make it hard to maneuver around when I need to leave my immediate checkstand area. It would also be difficult to sit because I frequently reach for items that customers put on the register counter. If a stool were bolted to the floor, I think it would be even more difficult to move around. If a stool were bolted to the floor, it would also be hard for me to bend down to reach

items located under the register, such as receipt paper and cleaning supplies. We also keep various items underneath the register, such as receipt paper. If the seat were screwed into the ground, it would be hard to move my body to grab the supplies.

10. I feel that standing is important for customers to have a positive perception of customer service. I feel that it looks more professional for cashiers to stand so that they can easily assist customers and perform these duties.

11. I also feel that having a seat behind the register could create a safety hazard. The space behind the register is already very small. Having a chair or a stool in the register area would get in my way and would also limit my ability to move freely. It would be difficult for me to react to any situation when seated. Walking around the seat or trying to move it out of my way could cause me to fall or injure myself. Customers also purchase heavy items, and attempting to lift these items while seated could injure my back and make it much more difficult to scan merchandise.

12. I generally work about four hours per shift. When I work four hours, I take a fifteen minute rest break. If I work over five hours, I also receive a lunch break. I always take my breaks. During my breaks, I either use the break room or shop around the store. If I use the break room, I generally sit. There are seats in the break room and I have never had a problem finding a place to sit. I think that my rest breaks and lunch breaks are enough time for me to rest my feet. After my breaks, I am ready to stand and finish my shift.

13. I have never performed my job duties at the front-end check stand while seated, and I do not want a seat. I do not come to work to sit and rest. I come to work to perform my job duties. All of the duties I perform on a daily basis require standing. Having a seat would make my job more difficult and create safety hazards.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 1 2, 2013, at Fontana, California.

_____
Sierra Balandran

LEGAL_US_W # 74650487.1

# EXHIBIT 2

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>        Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF VIRGINIA BRENNAN** |

I, Virginia Brennan, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I have been working at Kmart, in this position, since approximately October, 2000. I work at Kmart's Long Beach location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate my job duties include scanning items, putting merchandise into bags and completing a transaction by processing payment. When I do not have customers at the check stand, I perform other duties, including stocking merchandise and filling the counters around the front-end register.

3. My store has different check stand configurations. Some check stands at my store have conveyor belts, while others do not. At the check stands with conveyor belts, when I face the cash register, there is a long counter next to me with the conveyor belt. Next to the conveyor belt are a scanner and a demagnetizing pad. There is also a small counter area, which is about 12 inches square. Next to the demagnetizer pad are hooks for bags to hang. Connected to the edge of this counter there is a platform where I place bags once they are filled with merchandise. This platform is low to the ground and comes up to about my calf area. Connected to the edge of this platform is a podium, which is about 18 square inches and almost forms an L-shape with the bagging platform. This podium contains shelves where cashiers can keep supplies, but is not generally used when ringing up customers. At one of the conveyor belt check stands in my store, a phone sits on this podium. I would estimate that the standing area within the belted check stand is about six feet long but only two feet deep.

4. In addition to the check stands with conveyor belts, my store also has check stands without conveyor belts. When I am facing the cash register at the checkout stand without a conveyor belt, the counter on which customers place their merchandise is beside me. Connected at the end of the merchandise counter are the scanner and the demagnetizer pad. At the end of the counter, there are hooks for bags. The whole counter is shorter than the check stands with conveyor belts. When I face the register, there is a bagging counter behind me. This bagging counter is larger and shorter than the podium at the check stands with conveyor belts. Also, unlike the check stands with conveyor belts, this bagging counter is not connected to the rest of the check stand. The bagging table hits at about my

1   waist. I estimate that the standing area in a check stand without a conveyor belt is about three feet deep
2   and three or four feet long.

3       5.      I generally work the morning shift. If I am the opening cashier in the morning, I almost
4   always work at register nine. Register nine is closest to the service desk and does not have a conveyor
5   belt. If I come to work later in the day and a cashier is already working at register nine, I may be placed
6   at a check stand that has a conveyor belt. I almost always work at register nine and generally prefer to
7   work there because it does not have a conveyor belt. I prefer not to use a conveyor belt because I like to
8   reach for the merchandise myself. I find that it is more efficient to grab the item than to wait for the
9   customer's merchandise to move along the conveyor belt. For me, the process of ringing up a customer
10  goes more quickly when I do not work at a check stand with a conveyor belt. I also prefer check stands
11  without conveyor belts because items sometimes get stuck on the sides of the conveyor belt. For
12  example, when a customer purchases a greeting card, it can get stuck on the side of the conveyor belt,
13  which requires me to pull the card out. However, if I use a check stand without a conveyor belt, I can
14  just grab the item myself.

15      6.      Every checkout transaction involves a great deal of movement. Each transaction requires
16  me to twist and shift my body between the cash register, the merchandise counter, the scanner and the
17  bagging area. This is true of both check stand configurations at my store. When I work at a check stand
18  without a conveyor belt, I face the customer to begin the transaction. I take the merchandise the
19  customer places on the merchandise counter, scan it, and then twist my body and place it on the bagging
20  counter. I continue this process until all of the items have been scanned and placed on the bagging
21  counter. After this, I twist my body and take a step or two in order to face and use the register. This is
22  when I process the customer's payment. After I process payment, I turn about a half a turn and take
23  another step or two toward the bagging counter. In my store, we only provide paper bags. The City of
24  Long Beach requires that we charge 10 cents for each bag. Therefore, some customers bring their own
25  bags when shopping. Sometimes, customers who bring their own bags bag their own merchandise.
26  However, if the customer has not already bagged his or her merchandise, I place the merchandise into
27  the bags for the customer. Generally, I bag items for those customers who do not bring their own bags.

28      7.      The process I use for ringing up a customer at a check stand with a conveyor belt is

2

similar. I begin the transaction facing the customer. As the merchandise comes toward me on the conveyor belt, I scan it. I then place the merchandise directly into a bag that is sitting on the low platform. As I scan and load the merchandise into the bags, I shuffle my feet from side to side. I may also bend slightly to place the items in the bags. After I bag all of the merchandise, I turn my body and take about 2 to 3 steps toward the cash register. At the register, I finalize the transaction and process the customer's payment.

8. In ringing up customers, I often encounter customers who purchase heavy items. When a customer purchases a heavy item, I usually tell the customer to leave the heavy item in his or her cart. I generally do this regardless of whether I work at a check stand that has a conveyor belt or a check stand that does not have a conveyor belt. If the barcode on the item is facing me, I may reach across the counter with the wireless scanner and scan the item while it is in the cart. However, if the barcode is not facing me, I more often walk around the counter with the wireless scanner and maneuver the item until I find the bar code. I then scan the item in the customer's cart. If a customer is elderly or in a motorized wheelchair, I may also walk around the counter to assist him or her with unloading the merchandise onto the merchandise counter.

9. The check stands at my store have bins underneath the cash register and the merchandise counter. These bins are for hangers, go-backs, and trash. The bin for hangers is underneath the register. When customers purchase clothing on hangers, I pick up the item, remove the hanger, bend slightly to throw the hanger in the bin, and scan the item. If I am working at a check stand without a conveyor belt, I step toward the bagging counter and put the piece of clothing on the counter. After I ring up the transaction, I fold the clothes when I bag them. If I am working at a check stand with a conveyor belt, I will fold the item after scanning it and place it in the bag on the lower platform. It would be very difficult to place hangers in the bin underneath the register while seated. If the chair or stool sat near the register, it would block my access to the bin if I stood behind the stool. It would also be difficult to bend down while sitting on the seat to access these bins. Instead, I would need to stand up and move the stool out of the way so that I could place items in the bins or remove the bins to empty them.

10. Various supplies, such as cleaning products and replacement register tape, can generally be found at the service desk. In the check stands without conveyor belts, there is also space under the

3

bagging table where we can store cleaning supplies and register tape. If my check stand has these supplies, I do not need to walk over to the service desk. However, because these items are placed in shelves in the bagging table, it would be difficult to reach for them from a seated position. To reach the items, I would have to angle myself on the seat to reach, which could cause me to fall over. Moreover, if I were standing, a seat could get in my way as I try to approach the bagging table.

11.    When I work at a check stand with a conveyor belt, I do not have to reach as far in order to grab customers' merchandise to scan it. However, I find that I like reaching for customers' merchandise, because I find that grabbing the merchandise is faster than waiting for it to come toward me on the conveyor belt. This is one of the reasons why I prefer working at register nine, which does not have a conveyor belt.

12.    Even when I am assisting customers at the front-end check stands, there are times when I must leave my cash register to perform duties in other areas of the store. For example, if the store is not too busy and I need to perform a price check, I will leave the register to perform it myself. To perform a price check, I generally walk to the part of the store where the item is located and look up the price. Similarly, if the store is not too busy and a customer forgot an item or could not find an item he or she wished to purchase, I will accompany the customer to the area of the store where that item is located.

13.    When there are no customers at my check stand, I go to the front aisle to see if there are any customers approaching the checkout area. If there are, I invite the customer to my check stand and walk back into my register area. Similarly, if I do not have customers waiting in my checkout lane, but see that another checkout lane has a line, I invite those customers to my lane. I generally invite customers to my register from the registers near me. However, if the customer is in a line that is more than two aisles away from me, I generally walk over to that register to let the customer know that I can assist him or her.

14.    When I have no customers to serve, I begin performing other duties in the front-end area. For example, I straighten the candy shelves and the magazines, and restock the candy and gum shelves. About ten feet from the register at which I generally work, there is a cupboard for extra candy and gum. When I need to restock the front-end candy shelves, I walk over to the cupboard. While performing these duties, I try to keep my eyes open for customers and if I see someone coming, I walk back to my

4

register.

15. I feel it would be nearly impossible for me to perform my job duties while seated. Having a stool or a chair would make reaching for items extremely difficult. As I said before, even though the conveyor belts make it easier to reach, I prefer not to use those check stands because I feel I work more quickly grabbing merchandise off the counter myself. I also think that, regardless of whether or not my check stand has a conveyor belt, it would be nearly impossible for me to sit and perform my job. In ringing up customers at either check stand, my duties require me to move and turn my body frequently. If I were in a seat, I would have to stand up every time I need to turn. I also believe that having a seat in the area where I stand would get in my way and make it more difficult for me to move around freely.

16. Having a seat at the check stands without conveyor belts would not be feasible because the area is small and a chair or stool would cramp the area. Additionally, having a chair or stool would make it difficult to access the bins underneath the cash register and the merchandise counter. This is because it would block my access to the bins or force me to uncomfortably maneuver my body to reach under the register from the seat. Moreover, if the stool or chair were placed near the register, I would not be able to reach the bagging table from the seated position. When I scan items at the check stands without conveyor belts, I place merchandise on the bagging counter and then bag all of the merchandise on that counter. Since the bagging counter is behind me when I face the register, I would need to spin around on the seat just to face that counter. I would also need to get off the seat and take a step or two to reach that area so that I could bag the merchandise. Finally, having a chair or stool right by the register would make it difficult to use the register properly. Normally, when I use the register, I take a step backwards when the drawer opens. However, if a chair or stool were by the register, the cash drawer would open right into me.

17. For similar reasons, having a seat at the check stands with conveyor belts would also not be feasible. The check stands that have conveyor belts are long and narrow. When I work at the check stand with a conveyor belt, though I reach less, I twist my body and take steps to get from the register to the area where I bag merchandise. I also shuffle my feet from side to side as I grab items, scan them and bag the items. Because the standing area is long, if I had a seat near the register, I would not be able to

5

reach from the seat to scan and bag items. When I use the cash register, I need to take a few steps to get to the bagging hooks. Thus, every time I scan and bag merchandise, I would have to stand up from the seat and take steps to the bagging and scanning area. It would also be difficult to bag in a seated position at the check stands with conveyor belts. The platform that the bags sit on is much lower to the ground than the rest of the counters. Thus, I bend slightly when loading a bag. It would be very difficult to bend while in a seat. I feel it could be dangerous for me to try to move so much while seated, as I could pull a muscle or lose my balance.

18.  Working while seated would also affect my ability to perform my job well. One of the most important aspects of my job involves assisting customers. If I were to assist customers while seated, I believe it would impair my ability to provide excellent customer service, because I would work more slowly and less efficiently while seated. I also believe working while seated would create certain safety hazards. Placing a stool in the standing area for any check stand would make the area crowded. This would create a danger that I could trip or fall over the stool in trying to perform my job duties and move around.

19.  Before working at Kmart, I worked as a manager in a bakery. As a manager, I assisted customers, decorated cakes, and performed any task that was required of me. I never used a seat while working at the bakery. It would have been extremely difficult to use a seat at the bakery because I constantly moved around and performed different job duties. Working at Kmart also requires a great deal of movement and involves many different duties. I could not sit while performing my job duties at Kmart any more so than I could have sat while working at the bakery.

20.  I generally work the early morning shift at my store. On an average day I work four to four and a half hours. I generally work four to five days per week. During the holidays, however, I can work eight hour shifts. When I work a normal four or four and a half hour shift, I take one, fifteen minute rest break. If I work an eight hour shift, I receive two rest breaks and a lunch. During my breaks, if it is not too hot outside, I sometimes sit in my car and read. Otherwise, I spend my breaks in the break room. There are plenty of tables and chairs in the break room. I have never had a problem finding a place to sit in the break room during my breaks. I think my breaks are absolutely enough time for me to rest. After my breaks are finished, I feel refreshed and am ready to get back to work.

21.     I have never used a seat while performing my job duties as a cashier. I have never requested to use a seat and I do not want to use a seat while performing my job duties. I do not see how I could maintain the same level of efficiency and customer service if I were to work while seated.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 24, 2013, at Long Beach, California.

*Virginia Brennan*
Virginia Brennan

LEGAL_US_W # 74779865.1

# EXHIBIT 3

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>        Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF SHARI CARSON** |

LEGAL_US_W # 74517778.1

I, Shari Carson, declare:

1.      I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in September, 2000, and have worked in the Checkout Service Associate position since 2009. I work at Kmart's Coalinga location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.      My title is Checkout Service Associate like the other front-end cashiers; however, since I have worked at the Coalinga Kmart for twelve years, I have more responsibility than other cashiers. For example, unlike other cashiers, I take care of stocking the candy. In the morning, I take out the candy from the back room, bring it up to the front-end registers, and refill the front-end shelves. While I am not technically a supervisor, I have the authority to tell the other cashiers what to do in order to ensure everything at the front-end registers is running smoothly and efficiently. My job duties also include waiting on customers at the front-end registers, straightening merchandise near the registers, and cleaning the area around the registers.

3.      I am constantly in motion when I am ringing up customers. For example, I lift merchandise throughout my entire shift. Every time I perform a transaction—whether the customer is buying dog food or soap—I need to lift the items being purchased in order to scan them and place them in the bag. Most customers leave heavy items, such as water, in their carts instead of lifting them onto the counter. I sometimes reach over and across the counter to scan these items. Otherwise, I will walk around the counter and bend down to scan items on the bottom of the cart.

4.      At my store, there are eight registers all in a straight line. Only the first five registers are used on a daily basis. At Register Eight, we keep merchandise that customers bring to the front but choose not to purchase ("go-backs"). If I have a go-back, I must walk over to Register Eight, which is usually about fifteen to twenty feet away from the register where I am working. I also have to walk longer distances to do price checks if a product does not have a price code. I find that I typically have to do price checks more frequently than other cashiers because I work the morning shift. In the morning, I am the only cashier at the front-end registers, so I cannot ask another cashier to check a price for me.

During the day, there are more cashiers and more people working on the sales floor, so a cashier may be able to find someone else to perform price checks.

5. When I do not have customers waiting to check out, I never simply remain stationary waiting for the next customer to arrive. Instead, I am expected to perform other job duties. For example, I straighten the merchandise at the front of the store, which includes seasonal items and magazines, along with candy. I also straighten the fashion clothing area, which is located across from the registers. My job duties require a lot of bending. Cleaning supplies are kept under the register, so I need to bend down to reach the cleaning supplies every time I want to clean my register. This happens frequently since I am constantly cleaning my register to keep it presentable for customers. Customers are always leaving garbage around, and I have to bend to pick up trash off the floor.

6. A cashier would not be able to physically perform his or her job while seated. A seated cashier would not be able to scan and bag items. In order to even reach the counter while seated, a cashier would need a very tall stool. In order to bag items from a seated position on a tall stool, a cashier would have to bend over and lean to access the bag. A cashier could easily injure himself or herself in this process.

7. Having a seat at the front-end registers would make cashiers very inefficient and unproductive. A seated cashier would be reluctant to stand to help customers. This would have a very bad effect on customer service. If a cashier were sitting down, a customer would either think the cashier was lazy, or that the cashier was injured. In either of these situations, the customer would not want to ask the cashier for assistance. Customer service is one of the most important aspects of a cashier's job, and a cashier who does not provide excellent customer service cannot be effective in his or her position.

8. Even if there were chairs behind the register counters, there would be no time to sit in them. There is too much lifting and reaching involved in scanning and bagging merchandise for a cashier to sit while ringing up a customer. When there are no customers to ring up, cashiers should be straightening merchandise, cleaning the registers, or performing other tasks that require standing and moving.

9. I work the morning shift every weekday for four and a half hours each shift. I receive one fifteen-minute rest break during my shift. There is a break room with seats at my store, but I prefer

DECLARATION OF SHARI CARSON
U.S.D.C., N.D. Cal., No. 11-02575-WHA

LEGAL_US W # 74517778.1

1    to go outside during my rest break. I find that my rest break provides me with enough of a rest, and
2    would not want to sit more.

3         I declare under penalty of perjury under the laws of the United States that the foregoing is true
4    and correct.

5         Executed on May 8, 2013, at Coalinga, California.

6                                                                    Shari Carson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 745177778.1

DECLARATION OF SHARI CARSON
U.S.D.C., N.D. Cal., No. 11-02575-WHA

# EXHIBIT 4

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California  94105
Telephone: (415) 856-7000
Facsimile:  (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>        Defendant. | No.  11-02575-WHA<br><br>**DECLARATION OF PEGGY CLABOUGH** |

I, Peggy Clabough, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in the Checkout Service Associate position in August, 2012. I work at Kmart's Riverside location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate, the most important aspect of my job is being friendly and helpful to customers, and my primary duty is ringing up customers at the front-end registers. I have also unloaded freight, stocked shelves, and been an exit monitor.

3. Ringing up customers involves many types of movements. The front-end registers at my store do not have conveyor belts to move merchandise. Instead, customers place their items on the counter. When I am ringing up one customer, the next customer in line often starts placing his or her items on the edge of the counter. Then when it is the next customer's turn, I have to reach all the way across the counter to pull the items towards me before scanning them. I sometimes also have to stretch out my arms in order to hold the pin pad steady for customers while they are sliding their credit or debit card through the card reader. Customers often leave heavy items, such as cases of water or bags of dog food, on the bottom of their carts instead of lifting them onto the counter. When this happens, I have to walk around the counter and bend down to scan the items. I also have to bend down behind the counter whenever the register runs out of receipt tape, as we keep new rolls of receipt tape underneath the register. If a customer is disabled, I go around the counter to take his or her items out of the basket or cart and place the items on the counter at the beginning of the transaction. I return behind the counter in order to scan the merchandise, and then walk back around the counter to put the items back in the basket or cart at the end of the transaction.

4. When there are no customers in line at the registers, I never just stand and wait for the next customer to arrive. My store keeps certain types of merchandise, including candy, peanuts, hair accessories and superglue, in front of the registers. If there are no customers waiting, I frequently move around the register to straighten these items. I sometimes also straighten the clothing that is located across from the front-end registers. In addition, I am responsible for keeping the area around my workstation clean.

5.     Even though most of my duties are at the front-end register, I do have to walk away from the register for different reasons. For example, if I have to refill my register with change, I must walk to the customer service desk, which is located about twenty feet away from the front-end registers. During a typical four-and-a-half-hour shift, I need to get change from the service desk about two times. I sometimes perform "go-backs," or returning items that customers bring to the front-end registers but decided not to purchase, to their proper shelves. This can require me to walk to the other end of the store. Cleaning supplies are kept at just one of the nine cash registers in the store. When I clean my counter, I usually have to walk to a different register to get paper towels and a spray bottle of cleaning solution. On occasion I turn off my register light and walk to the back of the store to check and make sure the fitting rooms and restrooms are in good condition.

6.     I absolutely believe that standing is important for customer perception. I think that if a customer saw a cashier sitting, they would think the cashier was lazy and did not have an important job. I also think customers could be deterred from asking for help from a seated cashier.

7.     I think it would be impractical to have a stool behind the cash register. Every time the cash register drawer opened, I would have to get off the stool and move the stool out of the way. I think I would end up spending more time handling the stool than assisting the customer.

8.     The area where I stand behind the register is about two or two and a half feet wide. Even if a stool could be placed in that small space, it would be a very tight fit. If I ever had to move the stool—which would be, at a minimum, every time the cash register drawer opened—the only place I could move the stool would be into the next aisle. This would create an unsafe situation, since customers and cashiers could trip over the stool. Cashiers could also fall off the stool, or trip when getting on and off of the stool.

9.     On average, I work four and a half hours per shift, during which I receive one rest break. I usually go to my store's break room, which has seats and tables. I find that this break proves enough of a rest for me.

10.     I have never wanted to sit at the front-end registers during my time as a cashier. I cannot think of any job duties that I could perform effectively behind the counter while seated. There is no way I could pick up cases of water or other heavy items while seated. I would not be able to reach items on

the end of the counter or hand bags to customers if I were sitting down. Even if it were possible to reach for items or bag items while seated, I do not think it would be comfortable. I feel like I can move around more easily while standing. Getting up and down off the stool would be more troublesome than beneficial. If given the choice, I would choose to stand.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 6, 2013, at Moreno Valley, California.

*Peggy Clabough*
Peggy Clabough

# EXHIBIT 5

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br> vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>   Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF STEPHANIE GALLOWAY** |

I, Stephanie Galloway, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in the Checkout Service Associate position in June, 2012. I work at Kmart's Yuba City location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate, my duties include greeting customers, ringing up customer purchases, asking customers if they have a rewards card, putting their merchandise in bags, collecting payment, putting bags of merchandise in the customer's basket or cart, and making sure the customer has had a good experience in the store. When there are no customers to serve, I stock the candy aisles near my register, clean up the area around my register, and return items to the sales floor that customers have brought to the front-end registers but decided not to purchase.

3. When I am performing my job duties, I am constantly moving. I never stand still while working behind the front-end registers, and I cannot imagine doing any aspect of my job while seated. For example, when I am working behind the register, I must reach constantly. I have to reach for merchandise that customers place on the sales counter in order to scan the items, put the merchandise in bags, and place the bags in the customer's cart. I also have to reach to receive payment from customers. I could not sit during any part of a transaction because my reaching distance would be limited to an arm's length. When I stand, I can reach the whole length of the counter, which I am often required to do. My job also requires me to twist all of the time. When I face a customer, the register is to my right. Therefore, when I accept payment, I have to twist from the register to the customer. I also twist when I scan merchandise and put the items into bags. I could never do this while seated because of the movement required. I also bend frequently. For example, I bend when I stock the bottom layers of the candy aisle, throw away garbage, and access go backs. I perform each of these tasks at least once a day. I also bend when I have to scan a heavy or bulky item underneath the customer's cart. This happens about one in every four customers, and requires me to walk around the counter to scan the merchandise. There are also times when I must walk around the sales counter in order to access the phone for a price check, or when a customer wants to replace an item in the cart or basket. If I do not have customers waiting in line to checkout, I will leave the register to perform the price check or obtain the item myself.

1    However, if I do have customers in my line, I call for assistance in obtaining merchandise and
2    performing price checks. In order to reach the phone to call for assistance, I generally have to walk
3    about ten steps. I find that I am required to make such calls fairly often.

4        4.    I think customers would be really irritated if cashiers performed their duties behind the
5    front-end registers while seated. I have never been to a store where cashiers perform their job duties
6    while seated and I believe that seated cashiers would look very lazy. When I walk into an office, I
7    expect to see a receptionist sitting down, but when I go to a store, I expect to see cashiers standing. I
8    believe having cashiers seated behind the front-end registers would convey an extremely negative image
9    for our store and would send the message that our store's cashiers are not interested in helping
10   customers and providing good customer service. Moreover, if a cashier were to perform his or her job
11   duties at the front-end registers while seated, it would slow down the entire checkout process and add
12   quite a bit of time to each transaction. Even adding 30 to 45 seconds to each transaction, however,
13   would have a negative impact on customer service, as a customer standing in line behind five or six
14   people would be required to wait several minutes longer than he or she otherwise would. I do not see
15   why anyone would shop at our store if we could not provide the same level of customer service as other
16   stores do.

17       5.    At my store, there is no room to fit a seat or a stool behind the register counter. Even if
18   there were room for a seat, however, I would never use it. It would be unsafe, look lazy, and constantly
19   be in my way. I would be scared that I and other cashiers would trip on a chair or stool, or miss the seat
20   or stool while sitting down, which could cause us to fall. We would also be in danger of banging our
21   legs on the chair or stool, or of banging our heads when we had to bend down to retrieve items from
22   under the register.

23       6.    I once held a position with another retailer as a cashier, and we did not sit while
24   performing our duties there. Nor have I ever been inside a store where I have seen a seated cashier. In
25   my experience as a cashier, the work simply requires the cashier to stand. In my experience as a
26   customer, I know I would rather be assisted by a standing cashier.

27       7.    I receive a rest break about every two hours. During this time, I sit in the break room.
28   This is plenty of sitting for me. After my rest break I feel ready to continue working, which requires me

to stand and move around the store.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 19, 2013, at Yuba City, California.

Stephanie Galloway

LEGAL_US_W # 74661752.1

# EXHIBIT 6

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>               Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF LINDA HAHN** |

I, Linda Hahn, declare:

1.    I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in the Checkout Service Associate position in December, 2007. I work at Kmart's Costa Mesa location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.    As a Checkout Service Associate, my job duties include ringing up customers and bagging the merchandise they purchase. When there are no customers at the front-end registers, I perform other duties around the front-end, including stocking candy, straightening merchandise in nearby areas, and returning items to the sales floor that customers brought to the front-end but chose not to purchase (called "go-backs"). I also ensure the store is neat and presentable by cleaning the beverage center, registers, and counters.

3.    Every checkout transaction involves a variety of movements. If the customer places an item on the counter, I reach for the item, pick it up and scan it. If it is an item from health and beauty, electronics, cold weather, or luggage, I need to place it on the de-magnetizer which is located to the left of the scanner. After scanning and de-magnetizing the item, I must twist and take a step to the left in order to reach the bag rack in order to bag the item. I then twist back and take a step to the right to move back to the customer's remaining items. I continue twisting and stepping back and forth between the counter and the bag rack until I have scanned and bagged all of the items. Ninety percent of the time, I will take the bag off the rack and walk around the counter in order to place the bag in the customer's cart; otherwise, I lift the bag off the rack and hand it to the customer. If a customer leaves a heavy item, such as dog food, bottled water, or cat litter, in the bottom of his or her cart, I must walk around the counter with my hand scanner and bend over to scan the item. A customer will sometimes leave his or her cart or basket in the aisle near my register. When this happens, I must push the cart or bring the basket out into the open area near the front of the store so that it is not obstructing my register, and is available for an entering customer to use.

4.    Even when ringing up customers, I often need to walk to other areas outside of my register. For example, certain items need to be de-magnitized before the customer can take them home. Four of the registers at the store, two of which are used frequently, do not have de-magnetizers. If I am

at one of these registers, I must walk over to the next register in order to de-magnitize the item's magnetic security tag. Similarly, in order to get a price check, I must call the department from which the item came. Only Register Five has a phone, so unless I am already at that register, I must walk over to Register Five any time I have a price check. I usually need to get change from the service desk twice a shift. The service desk is located on the other end of Register Twelve. Any time I need change, I must walk a minimum of four to six feet if I am stationed at the register closest to the service desk, or up to forty feet if I am stationed at the registers closest to the store entrance. If other cashiers have a line of customers and I have no customers, I will engage in "Operation Invitation," which entails walking over to the waiting customers and inviting them over to my register.

5.    When there are no customers waiting at the front-end registers, I will exit my immediate register area to perform other tasks. For example, I may go the beverage center stock room, which is located next to Register Five, take out boxes of candy, and refill the candy displays that are in front of every register. There are displays near the front of the store that contain different merchandise depending on whether it is close to Christmas, Easter, the Super Bowl, or other seasonal events. When I am not assisting customers, I may straighten the items in these displays, or straighten the clothing that is located near the front-end registers. Carts of go-backs are kept in between Registers Ten and Eleven, and between Registers Nine and Twelve, close to the service desk. When I assist customers in checking out their purchases, I place go-backs in a bin at my register; then, when there are no customers who wish to checkout, I walk over the go-back carts and empty my bin of go-backs in the carts. If it is slow at the front-end registers, I sometimes sort the go-backs in the carts by department, to make it easier to return the items to their proper shelves.

6.    When I am standing at the cash register, the register is directly in front of me. The counter where customers place their merchandise is to my left. This counter does not have conveyor belts to bring customers' merchandise towards the register. Also to my left is the scanner, and, at most registers, to the left of the scanner is the demagnetizer. To the left of the scanner and demagnetizer, there is a bag rack that holds regular-sized bags. Larger bags are to the right of the regular-sized bags, but still to the left of the scanner and demagnetizer. Opposite the cash register, behind the cashier, there is the counter where you can place items after they are bagged. There is a hole in this counter where you

DECLARATION OF LINDA HAHN
U.S.D.C., N.D. Cal., No. 11-02575-WHA

1  can drop the go-backs, which fall into the go-back bin beneath the counter. Extra bags are also kept

2  below this counter. The opening for a cashier to exit the register area is to the right. The area behind the

3  register is about three feet long by two feet wide.

4      7.    It would be impossible for a cashier to scan or bag items while sitting down. If I were

5  sitting down, the counter would be above my waist, and I would not be able to reach customers'

6  merchandise without standing up. I need to take steps back and forth between scanning and bagging

7  items, which I could not do while seated. If I were seated, I would not be able to lift a bag and hand it to

8  a customer, much less walk around the counter and place a bag in a customer's shopping cart. Even if it

9  were possible to reconfigure the front-end registers to fit a seat, cashiers still could not sit down because

10  the nature of our job does not allow for us to sit down.

11      8.    I believe that standing is very important to customers' perception of cashiers at Kmart.

12  By standing, I feel like I am showing customers that I am there to help them. A customer would not

13  want to ask a seated cashier for help, since the customer would feel like he or she was bothering the

14  cashier. I once observed a seated employee at the service desk. This employee was given a seat to use

15  during her pregnancy. However, she looked so lazy and unprofessional that I felt embarrassed for her.

16      9.    It would be unsafe to allow cashiers to sit behind the front-end registers. If cashiers were

17  given stools, they would constantly have to climb on and off the stool. This movement could cause the

18  stool to fall over. If chairs were placed behind the registers, cashiers could trip over the chairs any time

19  they had to move. All of the registers have padded anti-fatigue mats, which make it more comfortable to

20  stand. These mats would make it difficult to move a stool or chair behind the register; you would not be

21  able to just slide a seat because the mats are cushioned. A cashier most likely would not be able to place

22  all four legs of a stool or chair on the mat, and so the stool or chair would be tilted at all times and more

23  likely to fall over. Even bolting the stool to the floor would not help, because the stool would always be

24  in the way. Constantly getting up and down off of a seat would put a strain on parts of the body.

25  Reaching for items while seated could also strain your back or arms, or could cause you to fall over.

26      10.   My store manager has always been accommodating of pregnant cashiers, and has been

27  willing to provide them with stools so that they could sit and rest whenever they needed to. Cashiers

28  who were provided with stools did not place the stools behind the registers, since they not could scan

DECLARATION OF LINDA HAHN
U.S.D.C., N.D. Cal., No. 11-02575-WHA

LEGAL_US_W # 74530324.1

and bag items while seated, and the stools would get in the way. Instead, they kept the stools in the aisle behind them in between the registers. They would stand while scanning and bagging, straightening and cleaning, and performing all of their other cashier duties, since they physically could not perform their duties while seated.

11. I usually work four-hour shifts, during which I receive one fifteen-minute rest break after two hours. My store has a big break room with tables, chairs, a couch, and two La-Z-Boy chairs, but I rarely use the break room. I prefer to go outside and take a walk around the block to get some fresh air during my break.

12. Prior to joining Kmart, I worked in several office positions. At those jobs, I was expected to sit down because I was working on a computer or on physical files behind a desk. Kmart is the exact opposite: if you are sitting down, you are not doing your job. As a cashier, my job is to ensure the entire front end of the store is functioning smoothly. I could not do that while seated.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 5, 2013, at Costa Mesa, California.

_Linda Hahn_
Linda Hahn

# EXHIBIT 7

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>        Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF CHRISTIAN HURTADO** |

I, Christian Hurtado, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in the Checkout Service Associate position in November, 2012. I work at Kmart's Costa Mesa location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate, my most important role is to provide good customer service. I assist the customer with all of their needs, answer any questions they have, and ring them up at the front-end cash registers. The customer service aspect of my job requires me to move frequently.

3. For example, if a customer is elderly, or if the customer purchases a heavy item, the customer sometimes leaves his or her merchandise in the cart while checking out. When this occurs, I step around the counter and bend over in order to scan the item with my hand scanner. In order to find a barcode to scan, I sometimes need to lift the item and rotate it around until the barcode is visible. My job duties as a cashier also involve reaching across the sales counter in order to obtain the merchandise a customer wishes to purchase. I also have to reach under the counter. For example, some items in the store have security tags that must be removed by the front-end cashier. The security tag remover is under the register and to the side. Whenever I have to take off a security tag, I need to reach down in order to access the security tag remover. Customers also tend to leave a lot of trash behind, and I frequently have to bend down and reach to pick up trash and throw it away. This is an important job duty, as presenting a clean store has a large impact on customer perception and is a key part of providing excellent customer service.

4. Customers often ask me to retrieve items for them, especially when they come to the store with children. When this happens, I turn off my register light, walk to the aisle where the requested merchandise is located, and bring the item back to my register. Similarly, if I observe a customer trying to find something, after I finish helping the customers in my line, I will exit the front-register area and go out to the customer to ask the customer if he or she needs help. If a customer comes in and needs a shopping cart, I will walk to locate a cart and bring one to the customer. When a customer purchases an awkward or bulky item such as a microwave, I will sometimes assist that person out to his or her vehicle. Doing so involves turning off my register light, wheeling the customer's cart

out to the parking lot, lifting the item into the customer's vehicle, and pushing the shopping cart back to the store or a shopping cart corral in the parking lot.

5. There are a number of reasons why I may have to walk over the service desk. If a customer decides not to purchase an item after I ring it up, I need to walk over to the service desk to find a manager who can void the item. We are not permitted to keep over $600 at our registers. When I reach this threshold, I must walk to the service desk, retrieve a bag with my cash register number on it, return to my register to put the money in the bag, and walk back to the service desk to hand the bag to the service cashier working behind the service desk.

6. If I see that other cashiers have a line of customers waiting and I have none, I will walk out into the aisle and invite customers over to my lane, and help the customers carry their items over to my register. This happens frequently during my shift. If there are no customers waiting at the front-end registers, I will move away to perform other tasks instead of standing and waiting for customers to arrive. I often straighten merchandise for sale around the register, like sunflower seeds, candy, and chips, or clean the area around the registers. Once in a while, I will take merchandise that customers brought to the front but decided not to purchase back to its proper place on the sales floor.

7. I cannot think of any job duties that I could perform while seated. I could not return items to their shelves or invite customers over to my register if I were seated. Customers often put their merchandise on the end of the counter furthest away from the cash register. If I were sitting down, I would not be able to reach these items. Even if customers placed their items closer to me, I would not be able to scan or bag them while seated because of the reaching I would be required to perform. If a customer were purchasing a heavy item like bottled water, I could not lift the item from a seated position. I would not be as effective or productive as a standing cashier, since it is much easier to move and bend while standing. A chair would get in the way and prevent me from accessing objects kept under the register, including the cleaning supplies and garbage can. I believe that cashiers who tried checking out a customer while sitting down could hurt themselves. For example, they could strain their backs while trying to reach for an item, or trip over the seat and fall down.

8. I also believe that sitting down at the front-end registers would be bad for customer perception. By standing, I convey to customers that I am more alert and interested and engaged in their

LEGAL_US_W # 74514968.1

needs compared to if I were sitting down. A seated cashier would look lazy to customers, and customers would not feel comfortable approaching a seated cashier to request assistance.

9. The break room at my store has two La-Z-Boy chairs, a cushion futon, and other seats. During my fifteen-minute rest break, I usually sit in a La-Z-Boy chair and watch the flat screen television. I feel rejuvenated after my break, and I would not want to sit more.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April _2_, 2013, at Costa Mesa, California.

Christian Hurtado

LEGAL_US_W # 74514968.1

# EXHIBIT 8

1   JEFFREY D. WOHL (Cal. State Bar No. 96838)
    JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
2   ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
    MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
3   PAUL HASTINGS LLP
    55 Second Street, 24th Floor
4   San Francisco, California 94105
    Telephone: (415) 856-7000
5   Facsimile: (415) 856-7100
    jeffwohl@paulhastings.com
6   jeffmichalowski@paulhastings.com
    elizabethmacgregor@paulhastings.com
7   malainafreedman@paulhastings.com

8   Attorneys for Defendant Kmart Corporation

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13

14  SABRINA CLINE AND COLLETTE              No. 11-CV-02575-WHA
    DELBRIDGE, individually and on behalf of all
15  others similarly situated,               **DECLARATION OF PATRICIA JUDKINS**

16          Plaintiff,

17      vs.

18  KMART CORPORATION, and DOES 1-50
    inclusive,
19
            Defendant.
20

21

22

23

24

25

26

27

28

I, Patricia Judkins, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I have held this position since May, 2010, when I began working at Kmart. I work at Kmart's Diamond Bar location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate, my primary job duty is to take care of customers and ensure that they have a friendly visit and want to return to our store. In order to provide excellent customer service, I always try to help the customer with everything. When a customer brings a shopping basket to the front-end registers and places it on the counter, I assist the customer by reaching into the basket to remove the merchandise. I also bag the merchandise for the customers. When customers require additional assistance, I help them out to their cars and assist them in placing their bags in their cars.

3. As a Checkout Service Associate, I generally work in the front-end area of my store. I check out customers at the registers, clean up around the register area, and make sure candy and other items near the register are fully stocked. I also handle "go-backs." This means that I return merchandise that customers bring to the front-end registers, but choose not to purchase, back to their proper locations on the sales floor. Even when I am working on the front-end registers, my job duties require me to move frequently.

4. I cannot imagine performing any of my job duties while seated, and I would not want to perform my duties while seated. As a Checkout Service Associate working at the front-end register, I am always lifting, twisting, reaching, and bending. I frequently lift items that include cases of water, dog food, cat litter, and clothing. Elderly and disabled customers often need assistance, so I lift all of their merchandise for them. I do this frequently because my store has a number of customers who are elderly or disabled. I also twist all the time. I have to twist to reach for merchandise, scan it, and put it in a bag. I also twist away from the register to the customers to look at them when I greet and speak with them, and to accept payment from them. When I am at the front-end registers, I spend a lot of time reaching. I reach over to customers to take merchandise from them, and across the counter to scan merchandise. Sometimes, the scanners do not work and I have to manually punch in the scan code. I

1  could not do this while seated because I would have to reach to access the keypad. It would hurt if I did
2  this while sitting down because the reach would be too long. I also have to bend down to scan
3  customers' merchandise when they buy something big or heavy. When customers buy heavy items, they
4  generally do not remove them from their cart. Therefore, in order to scan them, I must bend down and
5  scan the items in their carts. At times, I walk also around the counter to scan merchandise in customers'
6  carts. I also bend down to access bins below the register for go-backs and to throw away garbage.
7  Because of the movements required at the front-end registers, working while seated would be
8  impossible.

9       5.     It would also be impossible to use a seat at the front-end registers at my store because
10  there is no room for a seat or a stool behind the cash register station. The area is very small, and even
11  when I call a manager over to my register, I have to step out and allow him or her to go behind the
12  register because there is not enough room for both of us to stand. Even if there were enough room
13  behind the register, however, it would still be impossible for me to do my job while seated. I would
14  have to constantly stand up and move the chair out of the way to get merchandise, scan it, and bag it.
15  Moreover, there is never any time to sit. There is always something to do, such as cleaning,
16  straightening our cash register stations, making sure we have enough bags, and making sure the candy
17  and other items are fully stocked in our areas.

18       6.     Even if I had a seat, I would not want to sit down behind the register because it would be
19  uncomfortable and unsafe. I would be scared that I would trip on a seat or a stool, or that I would hit my
20  head on it after bending down to throw something away or get something from a bin beneath the
21  register. Moreover, I cannot imagine what seat or stool could accommodate all Checkout Service
22  Associates. We are all different shapes and sizes, and not everyone could fit in the same chair or stool.

23       7.     I also believe that sitting down would make customers unhappy. A seated Checkout
24  Service Associate would look lazy. I know that, for myself, I would feel uncomfortable if I were not
25  always at eye level with a customer. I would work more slowly while checking out a customer while
26  seated because I would have to sit down and get up all the time. I believe this would irritate customers.

27       8.     I do not want a seat or stool while working behind the register, and do not understand
28  how any Checkout Service Associate could want one. We have pads beneath our feet which make it

DECLARATION OF PATRICIA JUDKINS
U.S.D.C., N.D. Cal., No. 11-02575-WHA

LEGAL_US_W # 74630725.1

comfortable to stand. We also receive rest breaks every two hours. My shift generally lasts four and a half hours and I receive a rest break in the middle of my shift. I usually take my rest break while sitting down in my car. There are also seats in my store's break room where I can sit. I find that, between the foot pad behind the register, the frequent movement required by my job, and my rest breaks, I do not get tired during my shift. I would not want to sit more frequently.

9.      Before Kmart, I worked at another retailer and at a gas station. I never sat down while working at the cash registers at these locations, and could never have done my job effectively if I had. In my experience, it is easier, safer and more efficient to work behind a cash register while standing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April __, 2013, at Diamond Bar, California.

Patricia Judkins

LEGAL_US_W # 74630725.1

# EXHIBIT 9

1  JEFFREY D. WOHL (Cal. State Bar No. 96838)
   JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
2  ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
   MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
3  PAUL HASTINGS LLP
   55 Second Street, 24th Floor
4  San Francisco, California 94105
   Telephone: (415) 856-7000
5  Facsimile: (415) 856-7100
   jeffwohl@paulhastings.com
6  jeffmichalowski@paulhastings.com
   elizabethmacgregor@paulhastings.com
7  malainafreedman@paulhastings.com

8  Attorneys for Defendant Kmart Corporation

9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13   SABRINA CLINE AND COLLETTE                No. 11-02575-WHA
     DELBRIDGE, individually and on behalf of all
14   others similarly situated,                **DECLARATION OF LORYSA LABRE**

15                  Plaintiff,

16          vs.

17   KMART CORPORATION, and DOES 1-50
     inclusive,
18
                    Defendant.
19

20

21

22

23

24

25

26

27

28

I, Lorysa LaBre, declare:

1.      I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in the Checkout Service Associate position in January, 2013. I work at Kmart's Arroyo Grande location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.      When I was first hired by Kmart, I spent much of my time working at the front-end registers. I now spend most of my time working in the layaway department and on the sales floor. However, my job title continues to be Checkout Service Associate.

3.      In my store, the register is configured as a long table for the counter, where customers place merchandise. There is a little cubical behind the table where the Checkout Service Associate stands to scan merchandise and ring up the sale. There is also a separate bagging area, which is not connected to the register counter. There is no conveyor belt at my store's front-end registers.

4.      When I worked at the front-end registers, my job duties included checking out customers, cleaning the front-end area, and returning merchandise that customers did not wish to purchase back to the sales floor. The duties I performed depended on the time of day. For example, in the morning I was generally the only person working at the front-end registers. I therefore spent more of my time assisting customers in checking out their purchases. In the afternoon, however, my store would have more registers open, which resulted in shorter lines. As a result, I would spend more of my time in the afternoon performing other duties around the front-end registers.

5.      My job duties behind the front-end registers involved a great deal movement. For example, when a customer approached the register, the customer would place the merchandise he or she wished to purchase on the counter. I had to reach across the counter in order to obtain the merchandise. When I reached across the counter, I was generally required to reach a full arm's length. I also had to twist when I turned from the counter to the register to grab the scanner. When I placed a scanned item on the bagging table, I had to take a full step towards the bagging counter. I prefer to place merchandise on the bagging table after I scan it so as not to confuse it with items that still need to be scanned. When customers purchased many items, I would have to use the bagging table for scanned merchandise, because there was not enough counter space at the register for all the items.

6. When I worked at the front-end registers, I found that people purchased heavier items frequently. These items included large bags of dog food, furniture in boxes, large toys, and large quantities of food or beverages. When people purchased these heavier items, I was required to lean over the counter to scan the item in the cart if the bar code was visible. Alternatively, if the bar code was not visible, I was required to take the scanner and walk around the counter in order to turn the merchandise over to find the bar code and then scan it. I found that, nine times out of ten, I had to walk around the counter to scan merchandise because the bar codes were usually not visible when the customer brought the items to the register.

7. When I worked at the register and there were no customers who wished to check out, I would always step away from the register to perform other duties. For example, when no customers wished to check out, I would clean the register area. This included wiping down the scanner and key board of the register, sweeping, and cleaning the counter top. I would clean the register area every chance I had because a clean register area is an important part of customer service, as customers prefer to see that the store is neat and clean. It is also important to stay on top of cleaning the register area because there is such a high volume of purchases throughout the day that the register area can become messy very quickly. I also performed other duties around the front-end register, including cleaning the drinking fountain, organizing clothes, and returning items to the sales floor that customers had brought to the register but decided not to purchase. I always worked near the registers in case a customer came to the front and wished to be helped in checking out. When that happened, I would return to the register to complete the transaction.

8. I would not be able to perform my job duties at the front-end register while seated. I know this from experience. On one shift I worked, I felt ill. My supervisor gave me a stool for the last two hours of my shift to use while working at the register. Even though I had this stool, I still stood to help customers check out. I stood while helping customers because I feel that it is disrespectful for a cashier to sit while working behind the register. I believe that a seated cashier looks lazy and works less efficiently. I know that I would prefer to be assisted by a cashier who is standing, and that I work more efficiently while I stand. I also stood while assisting customers because working behind the register required too much movement for me to perform while seated. While seated, I could not comfortably

reach across the counter for merchandise or reach to place the merchandise on the bagging table. The reach was too far and I had to stand in order to move the merchandise around the register area. Because there is so little space behind the register, I would have to move the seat entirely out of the register area when I was helping customers. Otherwise, the stool was always in the way and made moving around very difficult.

9. The only time I used the stool was when customers did not wish to check out. If I had not been ill, I would not have stayed behind the register during these times, but would have moved away to perform other duties, such as cleaning and returning merchandise to the sales floor. I cannot perform duties such as cleaning while seated because it requires me to walk around, reach far across the register and engage in quite a bit of physical activity. I was only able to sit when not assisting customers because my manager was accommodating my illness. My job does not permit me to stand idly at the register. Instead, I am required to actively perform duties throughout my shift.

10. It would be impossible for a Checkout Service Associate to perform his or her duties properly while seated, both because there is so much movement required, and because standing is important for good customer service. I think it would be dangerous if a Checkout Service Associate were to work while seated because of the movements required. It would be difficult and dangerous to reach and twist while seated. It would also be difficult to perform the duties of a Checkout Service Associate if a stool were permanently fixed in the register area. The stool would always be in the way and moving around would be very difficult. It would also be difficult to open the register to get the money, as the cash drawer would come out towards the stool. There are also drawers under the bagging counter, where we store receipt tape and put away security tags. It would be difficult to open these drawers if there were a stool behind the register. The entire register area would have to be changed in order to place a stool behind the register. In order to fit a stool, the area behind the register would have to be much larger. This would mean that there would be less space for displaying merchandise that people buy at the front-end.

11. I no longer work at the front-end registers very often. I do, however, work as an on-call cashier. As an on-call cashier, I can be called to the front-end registers if the registers are particularly busy in order to help customers check out faster. However, this does not happen frequently. Now, I

usually work in the layaway department. The layaway department is where customers place items that they wish to purchase at a later time. In layaway, I handle very large items, including furniture. Because customers generally bring very large items to layaway, there is quite a bit of storage space in layaway, so I have to do quite a bit of walking when I store and retrieve items. It would be very difficult to perform my duties in layaway while seated, because of the large amount of walking and heavy lifting I am required to perform. When I am not working in layaway, I work on the sales floor. My duties on the sales floor include placing merchandise that has been stored in the backroom on the shelves in the store, putting tags on merchandise, organizing clothes, and helping customers who require assistance.

12. Before I worked at Kmart, I worked as a cashier at a grocery store. I feel that it would have been difficult to perform my duties as a cashier there while seated as well. At the grocery store, the front-end registers had conveyor belts to bring merchandise to the scanner. Even with this conveyor belt, however, I found that I still had to do quite a bit of reaching in order to obtain the merchandise to scan it. It was better for me to stand at the register, both because it made moving around easier and because it resulted in better customer service.

13. I generally work shifts ranging from four to six hours. When I work a four hour shift, I always take a rest break. When I work longer than five hours, I take both a rest break and a meal break. On these breaks, I am able to sit in my store's break room. There are lots of seats in the break room, and there is also a lounge chair, so I am always able to sit if I want to. I usually sit during my breaks, but sometimes I prefer to stand.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 19, 2013, at Arroyo Grande, California.

Lorysa LaBre

# EXHIBIT 10

1  JEFFREY D. WOHL (Cal. State Bar No. 96838)
   JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
2  ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
   MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
3  PAUL HASTINGS LLP
   55 Second Street, 24th Floor
4  San Francisco, California 94105
   Telephone: (415) 856-7000
5  Facsimile: (415) 856-7100
   jeffwohl@paulhastings.com
6  jeffmichalowski@paulhastings.com
   elizabethmacgregor@paulhastings.com
7  malainafreedman@paulhastings.com

8  Attorneys for Defendant Kmart Corporation

9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13  SABRINA CLINE AND COLLETTE          No. 11-02575-WHA
    DELBRIDGE, individually and on behalf of all
14  others similarly situated,          **DECLARATION OF SARAH LAWRENCE**

15                Plaintiff,

16       vs.

17  KMART CORPORATION, and DOES 1-50
    inclusive,
18
                  Defendant.
19

20

21

22

23

24

25

26

27

28

I, Sarah Lawrence, declare:

1.  I am a current Kmart employee working as a Checkout Service Associate in Kmart's Chico location. I began working for Kmart in September 2012, when I was hired as a Checkout Service Associate. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.  As a Checkout Service Associate, my job duties include helping customers ring up their purchases and complete transactions, bagging items and assisting customers with their merchandise, and organizing the front end cash registers.

3.  In my store, the front-end cash registers are configured so that the register is perpendicular to the counter where customers place their merchandise. Thus, when I face the cash register, the merchandise counter is off to my side. There are areas for the scanner and demagnetizer connected to the counter where customers place merchandise, and together these three areas form one long counter. Bags for customers' merchandise hang on hooks at the end of this long counter. When I face the register, there is a bagging counter behind me. When I need to place bags on the bagging counter, I take a step toward that counter.

4.  My job duties at the front-end registers require me to move a great deal. For example, when customers place their merchandise on the counters, I must reach across the counter to obtain the items in order to scan them. When I scan items, I must twist my body frequently between the scanner and the bagging area. When customers have larger items, such as potting soil or toilet paper, they often leave them in their carts. I scan these larger items in different ways, depending on how the item is placed in the customer's cart. For example, if the bar code on the larger items of merchandise is visible from the counter, I reach across the counter in order to scan the item. If the bar code is not visible, I walk around the counter in order to scan the item with a wireless scanner. If the item is located in the bottom of the customer's cart, I walk around the register and bend down in order to scan the item. There are also times when a customer may place a heavier item, such as a microwave, on the merchandise counter. In these cases, I must lift these heavy items, which can weigh twenty pounds. There are also many times when I am required to walk around the counter to assist a customer. For example, when I have elderly customers or customers who are in wheelchairs, I often walk around the counter to help

them unload their merchandise from their baskets. Doing so helps show the customer my commitment to providing excellent customer service, and makes the customer's experience better and more enjoyable.

5. During my shift I am always working, even when I am not assisting customers at the cash register. When there are no customers in my line I look around the store to see if anyone wishes to checkout. If I do not see a customer who wishes to checkout, I leave the register and immediately begin performing other duties. For example, on almost every shift I return items that customers have brought to the front-end registers but chosen not to purchase back to where they belong on the sales floor. There are also times when I cover another employee's job duties while that employee is taking a break. Covering another employee's duties takes me to different parts of the store away from the front-end registers. When I do not have customers, I also clean my register area as well as the front of the store. Keeping the store clean and presentable is essential to providing excellent customer service and ensuring a good customer experience.

6. I do not see how a stool could fit behind the front-end registers. Having a seat in the area where I stand behind the register would make it difficult for me to perform my duties because it would be much harder for me to move around. The check stand area is only about three feet by four feet, so the stool would always be in my way. Having a stool constantly impede my movements would pose safety concerns for me. For example, when I place a bag on the bagging counter or in a customer's cart, I generally take several steps toward the bagging counter. If a stool were in the area where I stand, it would be hard for me to take those steps, because the stool would block my access to the counter. It would also be very difficult for me to perform the physical movements required by my job duties while seated. For example, it would be very difficult for me to scan items while sitting down. Customers often have larger items they wish to purchase, and trying to move these items while seated would be very difficult, as I would not have enough leverage to lift them. It is much easier for me to lift heavier items while standing. I also feel safer when I lift heavier items while standing.

7. If there were a stool behind the register area, I would work more slowing during each transaction because I would have to maneuver around the stool or move it out of my way. Increasing the amount of time I spend on each transaction would have a very bad effect on customer service, because

LEGAL_US_W # 74621925.1

1  customers would become impatient. Customers would become frustrated that they had to wait in line

2  while the cashiers sit to perform their duties. It is important for me to work quickly and efficiently in

3  my position. Standing is important for customer service, because it allows me to work more effectively

4  and lets the customer know that I care about providing him or her with the assistance he or she needs in

5  order to check out quickly.

6      8.      My shift generally lasts between four to five hours. When I work less than five hours, I

7  take one fifteen minute rest break. I always take my rest breaks. During my breaks I usually sit in my

8  car or in the break room. Sitting during my rest breaks is enough rest for me. I do not mind standing

9  while working during my shift because it is not such a long time to be standing. There are also mats on

10  the ground behind the registers, which makes standing easier on my back. Based upon my experience at

11  Kmart, very few cashiers work more than five hours, unless it is during the holiday season. During the

12  holiday season, we are extremely busy and assist a very large number of customers. During these times,

13  it is even more essential that we work quickly and efficiently to assist so many customers. I do not see

14  how a cashier could work while seated when it is not the holiday season, let alone during the holidays

15  when we have so many customers in the store.

16      9.      I have never asked to use a seat while working at the front-end registers and I do not want

17  to use a seat or a stool. I previously worked in the fast food industry, at the drive-through window, and I

18  did not have a seat or stool at that position. Working at a drive-through is such a fast-paced job and

19  required so much movement that I could not have worked while seated. Where I worked, the space was

20  small and there was not even a place for a seat or a stool. Having the stool would have been a safety

21  hazard because it would have constantly been in my way. In general, I think standing is important to the

22  hospitality industry. In my experience, assisting customers with purchases is a job that requires me to

23  stand in order to work effectively.

24      I declare under penalty of perjury under the laws of the United States that the foregoing is true

25  and correct.

26      Executed on April ___, 2013, at Chico, California.

27                                      _Sarah Lawrence_
                                         Sarah Lawrence

28

# EXHIBIT 11

1   JEFFREY D. WOHL (Cal. State Bar No. 96838)
    JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
2   ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
    MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
3   PAUL HASTINGS LLP
    55 Second Street, 24th Floor
4   San Francisco, California 94105
    Telephone: (415) 856-7000
5   Facsimile: (415) 856-7100
    jeffwohl@paulhastings.com
6   jeffmichalowski@paulhastings.com
    elizabethmacgregor@paulhastings.com
7   malainafreedman@paulhastings.com

8   Attorneys for Defendant Kmart Corporation

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13   SABRINA CLINE AND COLLETTE          No. 11-02575-WHA
     DELBRIDGE, individually and on behalf
14   of all others similarly situated,    **DECLARATION OF LESLYE MERGELE**

15              Plaintiff,

16        vs.

17   KMART CORPORATION, and DOES 1-50
     inclusive,
18
                Defendant.
19

20

21

22

23

24

25

26

27

28

*Leslye* /s/

I, ~~Lesley~~ Mergele, declare:

1.    I am a current Kmart employee working in the Checkout Service Associate position. I began working for Kmart in the Checkout Service Associate position in September, 2012. I work at Kmart's Riverside location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.    As a Checkout Service Associate, my job duties include assisting customers purchase items at the front-end cash registers. While at the front-end registers, I scan and bag clothing and merchandise. I also assist customers, especially those who are elderly or disabled, in putting merchandise in their cart. I am also responsible for cleaning the front-end area and straightening the merchandise near the cash register.

3.    Ringing up customer purchases at the front-end registers involves a great deal of movement. When I ring up a customer's purchase, I must reach across the counter to obtain the merchandise. Customers often place the merchandise on the edge of the counter, so I have to do a full stretch across the counter in order to reach the merchandise.

4.    Customers often bring fairly heavy items to the register. These items include large bags of dog food, large mirrors and pictures, and microwaves. It would be very difficult to lift these items while seated because they are so heavy. If I tried to lift such items while seated, I would be afraid that I would hurt myself. Many of the customers I assist purchase these heavier items. While there are times when I must lift these items in order to scan them, there are also times when I scan the items without removing them from the cart. Doing so requires me to bend down, as people usually put these items underneath the cart. In order to scan the items, I must walk around the cash register, bend down, and scan the bar code. There are also times when I can scan the merchandise by leaning over the counter and reaching towards the item with the scanner.

5.    While working at the register, I must turn frequently between scanning items and ringing up the sale at the register. When I open the cash drawer of the register, I generally have to take a step back away from the register when the door comes out. I also have to turn between the register and the bagging area. Placing merchandise on the bagging counter requires me to step over to the bagging counter.

6. When I am not working at the front-end register helping customers ring up their purchases, I perform other duties around the front-end registers. For example, I make sure the area around the registers is neat and clean so that it looks presentable for customers. I also collect merchandise that has been left in the front-end area and place it in a basket to be returned to the sales floor. I have a basket under my register where I place merchandise that customers bring to the front-end registers but choose not to purchase. There is also a basket for this merchandise on the sales floor. When my basket gets full, I place the items in the basket on the sales floor so that the merchandise can be sorted and the items returned to their shelves. I always stay busy throughout the day performing my duties and am never standing still. All of my duties require me to move around.

7. When I am standing at the front-end registers, the cash register area is perpendicular to the counter where customers come and place their merchandise. There is also a bagging counter set apart from the register. Moving from the counter to the bagging area requires me to step towards the bagging area. There is a space between the counter and the bagging area that I can walk through in order to scan merchandise in customers' carts. The area behind the counter is very small. I am five feet, five inches tall and I would not be able to lie down in the space where I stand behind the register.

8. If there were a stool behind the register, it would always be in the way. Because there is not very much space behind the register area, if there were a stool fixed to the floor behind the register, there would not be enough space for me to stand. I would bump into the stool whenever I tried to move around, which would be frustrating. I would want to move the stool out of the register area whenever I was working with customers. I feel that customers prefer to be assisted by cashiers who are standing, as standing allows the cashier to provide better customer service. I also feel that working while seated would make me much slower. Working while seated would be more difficult, and I would therefore work less efficiently. This would also impede my ability to provide good customer service.

9. I usually work four hour shifts, but can also work eight hour shifts. When I work four hour shifts, I take one rest break. When I work eight hour shifts, I take two rest breaks and one meal break. I take these breaks in my store's break room, where there are quite a few seats. I am always able to sit during my breaks when I wish to do so. I like standing while I work during the day because I find

that moving around and staying busy helps the day go faster. I also find that I am more comfortable when I am standing.

10.     I have never asked to use a seat while working at the front-end register, and I do not want to use a seat. I feel that I work more efficiently and quickly while standing. Performing my duties while seated would add a great deal of time to each transaction. Standing is easier and allows me to work more productively and provide superior customer service.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 2 2013, at Riverside, California.

Lesley Mergele

# EXHIBIT 12

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California  94105
Telephone: (415) 856-7000
Facsimile:  (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>    Defendant. | No.  11-02575-WHA<br><br>**DECLARATION OF LISA MIRANDA** |

I, Lisa Miranda, declare:

1.       I am a current Kmart employee working in the Checkout Service Associate position.  I began working at Kmart in the Checkout Service Associate position in June, 2012.  I work at Kmart's Grass Valley location.  I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.       When I started working at Kmart, I spent much of my time cashiering at the front-end registers.  In the fall of 2012, my manager asked me to help in the Health and Beauty department.  For about three months during the busy holiday season, I stocked and straightened the Health and Beauty department.  I moved back to mostly working at the front-end registers in January 2013.  Since I was hired, my job title has always been Checkout Service Associate.

3.       When I stand at the front-end register in my store and am facing the customer, there is a conveyor belt on which the customer can place his or her merchandise to my right.  The conveyor belt leads to the scanner.  To the left of the scanner, the counter drops down into a "U" shape, with the bags hanging down from the right-hand side of the "U."  After the bagging area, the counter goes back up, forming the left-hand side of the "U," and leads to the cash register.  Regular receipts print out next to the cash register, while receipt coupons print out from a coupon machine located behind me.  For every transaction, I need to lift each item off of the conveyor belt and twist my body to scan it.  I then will bend slightly in order to place the item in a bag.  Customers sometimes leave large or heavy items, such as dog food, cat litter, batteries, and blankets, on the bottom or the inside of their carts.  This requires me to walk around the counter and bend down in order to scan the item.  To complete a transaction, I need to take one or two steps between the bagging area and the register screen and keypad.  For extremely large, heavy items that are stored in the backroom, such as washers, dryers, and refrigerators, we scan tags that are kept at the registers instead of scanning the items themselves, and other employees will assist the customers with transporting the items out to the customers' cars.  However, for the vast majority of items, customers will bring them up to the registers, and cashiers scan the actual items.

4.       If a receipt coupon prints out of the coupon machine, I must turn around to grasp the receipt coupon, then turn back around to hand the coupon to the customer.  After I have scanned and bagged all of the items, I place the bags in the customer's cart.  I will either lean and reach in order to

1  place the bags inside the cart, or, if the customer has a large number of bags, I sometimes exit the
2  register area and walk around to the customer's cart in order to place the bags inside the cart.

3      5.     At my store, there are nine front-end registers in a row. The customer service desk is
4  located about ten feet away from Register One. Usually, if I need change or an override, I can push a set
5  of buttons on the register, and a supervisor will come over to my register. However, in the event a
6  supervisor does not respond to my page, I sometimes need to walk over to the customer service desk to
7  get change or to find a supervisor to complete a void or override at my register.

8      6.     Even when there are no customers to serve at the front-end registers, I like to keep busy.
9  I may straighten the items that are for sale at the end of my register, such as candy and seasonal items
10 like bubbles or St. Patrick's Day-themed merchandise. I often clean the area around my register in
11 between customers. Spray bottles and paper towels are kept at every other register, and sanitizing wipes
12 are located at the customer service desk, so I may need to walk to the next register or the customer
13 service desk in order to retrieve the cleaning supplies before wiping down my register. Sometimes, a
14 manager will ask me to turn off my register light and straighten a department that is further away from
15 the front-end registers or return items customers have brought to the front-end registers but chosen not to
16 purchase ("go-backs") to their proper shelves. I have also been asked to go to the small stockroom on
17 the left-hand side of the store in order to retrieve more receipt paper.

18     7.     During the holidays, I worked in the Health and Beauty department for approximately
19 three months. I would come in at 6:00 a.m. and stock the health and beauty products, lifting items like
20 shampoo, first aid kits, and feminine products off of pallets and placing them in their proper locations on
21 the shelves. At 8:00 a.m., I would receive a break. Afterwards, I would stock items from the backroom
22 or from the overhead shelves and straighten items. If a customer needed help finding an item, I would
23 assist him or her. While I have not had a stocking shift since the middle of January and have largely
24 returned to working mostly at the front-end registers, I still occasionally work shifts in which I am
25 primarily responsible for straightening merchandise.

26     8.     I could not perform my duties effectively while seated. I need to twist my body to scan
27 and bag merchandise. If I were sitting down, I would probably have to do even more twisting, which
28 could result in a back injury over the long term. During every transaction, I must take steps between the

DECLARATION OF LISA MIRANDA
U.S.D.C., N.D. Cal., No. 11-02575-WHA

1   scanning and bagging area and the cash register. I could not do this while seated. I certainly could not

2   have performed my duties in the Health and Beauty department while seated, as I had to stock eight

3   aisles with merchandise.

4        9.     My store is very accommodating of cashiers with disabilities and pregnant cashiers. For

5   example, one cashier who was eight-months pregnant was given a stool to use at the front-end registers,

6   so that she could sit down when she felt as though she absolutely had to sit. She always stood up when

7   she was helping customers, as she would not have been able to bag items while sitting down. Other

8   cashiers, including myself, would help her with the other tasks cashiers are expected to perform, such as

9   returning go-backs and cleaning around the registers.

10       10.    During my initial training when I was first hired, I was introduced to Kmart's policy

11  called Operation Invitation, which is part of how Kmart provides good customer service. We are

12  instructed to greet every customer who comes to our register and ask if he or she found everything all

13  right, and whether he or she has a rewards card. As part of Operation Invitation, if I have no customers,

14  I will go to the front of my register and straighten items in the area. We are trained to approach every

15  customer who comes within five or ten feet and ask whether he or she is finding everything he or she is

16  looking for. A cashier could not engage in Operation Invitation while sitting down because a seated

17  cashier would not be able to walk to the front of the register. Furthermore, by sitting down, a cashier

18  would not be showing customers that he or she is there to assist the customer, which is the purpose of

19  Operation Invitation.

20       11.    I feel that standing is important for customer perception. By standing, cashiers show

21  customers that they are there to do their jobs to their fullest potential. A seated position is more relaxed,

22  and something you do when you just want to feel comfortable. If I were a customer and saw cashiers

23  sitting down, I would perceive the cashiers as lazy and inefficient. I would think that they were making

24  it harder for me to get in and out of the store as quickly as possible. If I had the option of shopping at a

25  store in which cashiers stand and one in which cashiers sit, I would prefer to shop at the store in which

26  cashiers were standing up and actively doing their job, instead of a store in which cashiers sat down.

27  Customers have expressed to me that if they saw a seated cashier, they would think that the cashier was

28  lazy.

12.    My shifts vary between four and eight hours per shift.  I receive meal and rest breaks, which I sometimes take in the break room.  The break room at my store has benches against the walls, as well as tables and about eight to ten chairs.  I find that sitting during my meal and rest breaks provides enough of a rest for me, and I would not want to sit more.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April ___, 2013, at Grass Valley, California.

_____
Lisa Miranda

DECLARATION OF LISA MIRANDA
U.S.D.C., N.D. Cal., No. 11-02575-WHA

LEGAL_US_W # 74720261.1

# EXHIBIT 13

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>       Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF ARYANA SHARPE** |

I, Aryana Sharpe, declare:

1.    I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in March, 2012. I work at Kmart's Bishop location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.    As a Checkout Service Associate, my job duties include ringing up customers' purchases, bagging merchandise, cleaning the register, and helping to organize the area around the registers. When I am not serving customers, I sometimes cover another employee while he or she is on a break. Doing so may require me to work in a different part of the store, such as the garden center or the electronics department. However, I primarily work at my store's front-end registers.

3.    At my store, the checkout stands have conveyor belts, on which customers place the merchandise they wish to purchase. When I face the cash register, the conveyor belt is off to my side. Directly next to the conveyor belt is the scanner and next to the scanner is the demagnetizer pad. The scanner and demagnetizer are connected to the conveyor belt to form a long counter. At the end of the counter there are hooks where bags hang. The area behind the register is approximately three feet by two feet.

4.    Every checkout transaction requires me to move in a variety of ways. Even though my store has conveyor belts, I nevertheless need to reach while ringing up a customer's purchases. For example, I must sometimes reach across the conveyor belt to scan an item that a customer has left in his or her cart. Customers often leave larger and heavier merchandise in their carts. I reach across the conveyor belt to scan such items when I can reach the product's bar code with my hand held scanner without leaving the register. There are also times, however, when I cannot see the bar code from where I am standing. When I cannot see the bar code of merchandise in a customer's cart, I must walk around the merchandise counter in order to scan the item using a wireless scanner. If the item is located underneath a customer's cart, I must bend down in order to scan the item. I also need to bend when I drop something on the floor or need to throw something away.

5.    Lifting is also a large part of my job, as I must lift the items customers wish to purchase in order to scan them. When I ring up a customer, I generally scan the items and place them on the

demagnetizer pad. I then tell the customer the total amount of the transaction. While the customer pays for the merchandise, I begin to bag the items. When I am bagging a customer's merchandise, I reach for the items that I have scanned. I also reach when I need to replace the receipt paper in the register or collect money from a customer. While bagging, I generally leave the bags on the hooks and place the merchandise inside the bag. Once a bag is full, I take the bag off the hook and place it into the separate bagging area. When I am assisting customers who are in wheelchairs or who are elderly, I often walk around the register to put the bags in their carts.

6. Even when I am assisting customers by ringing up their purchases, I sometimes walk away from my register to another part of the store. For example, items customers wish to purchase are sometimes missing a UPC code, which tells me the price of the merchandise. When this happens, I must determine the price of the item myself. To do so, I walk to the area of the store where that item is located to check the bar code. In general, I walk to another part of the store to do a price check several times each shift.

7. Cashiers are not supposed to stand around doing nothing. Therefore, when there are no customers who wish to checkout, I move away from my register to perform other duties. Before leaving my register, however, I check to see if there are customers waiting to checkout in another lane. If I see customers waiting in another checkout lane, I invite a customer to come checkout at my register. To do so, I walk over to the customer and tell him or her that I am available to assist him or her at my register. When there are no customers to assist at the front-end register, I perform duties that include cleaning the registers and front-end area, and organizing my register lane and the displays that are in front of my register.

8. I do not see how I could perform my job duties as a cashier while seated. As a cashier, my job duties require me to move a great deal. For example, after scanning merchandise, I must take a few steps to bag the items. Since the merchandise scanner is not close enough to the bags, it would be nearly impossible to both scan items and bag them while in a seated position. Moreover, whenever I open the cash register, I must take a step backward when the drawer opens. If I were in a seat or on a stool, it would be difficult to avoid getting hit by the register drawer. Even though my store has checkout stands with conveyor belts, I still could not work while seated. While a conveyor belt makes it

somewhat easier to reach merchandise customers wish to purchase, my job duties still require me to move around a great deal and take steps between scanning items and bagging them.

9.     I also feel that having a seat behind the cash registers could create an unsafe situation. While a seat may physically fit in the space behind the register, it would constantly be in my way. Because there is such a small amount of space behind the register, I believe that having a seat would increase the likelihood that I could trip. The area behind the register is simply too crowded for a seat or a stool.

10.    I believe that standing is important to a customer's perception of customer service at Kmart. If a cashier were to perform his or her duties while seated, I believe that customers would perceive the cashier as lazy. Customers often complain about waiting in lines. I believe that customers would become even more frustrated about waiting in lines if cashiers sat while performing their job duties. As a cashier I always try to provide good customer service to customers and I feel that having a seat would have a negative impact on customer service.

11.    I generally work the mid-day shift. My shifts usually last between six to seven hours. During my shifts, I receive two fifteen minute rest breaks and an hour for lunch. I usually sit in my car during my breaks. I find that, even working a six to seven hour shift, having two rest breaks and a lunch is sufficient rest for me.

12.    I have never requested a seat nor do I want to use a seat as a cashier. I do not see how I could perform my job duties as a cashier while seated. I also believe that having a seat behind the register would get in my way and increase the likelihood that I could get hurt.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 23, 2013, at Bishop, California.



Aryana Sharpe

DECLARATION OF ARYANA SHARPE
U.S.D.C., N.D. Cal., No. 11-02575-WHA

LEGAL_US_W # 74754398.1

# EXHIBIT 14

JEFFREY D. WOHL (Cal. State Bar No. 96838)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
jeffmichalowski@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE AND COLLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>KMART CORPORATION, and DOES 1-50 inclusive,<br><br>        Defendant. | No. 11-02575-WHA<br><br>**DECLARATION OF DANIELLE WALSH** |

I, Danielle Walsh, declare:

1. I am a current Kmart employee working in the Checkout Service Associate position. I began working at Kmart in the Checkout Service Associate position in November, 2011. I work at Kmart's Petaluma location. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. As a Checkout Service Associate, my most important role is providing excellent customer service. My goal is to make sure each and every customer has a "wow" shopping experience. I want my customers to feel like we appreciate their business so that the customers will want to come back to our store. Customers have complimented and thanked me for working hard, and I enjoy receiving that feedback.

3. Each week, I usually have two shifts working as a Garden Shop Merchandiser in my store's Garden department, so I spend about forty percent (40%) of my time working on the sales floor. The remaining sixty percent (60%) of the time, I am working at the front-end registers. It does not matter whether I am working in the Garden department or at the front-end registers; my job title is always Checkout Service Associate.

4. There are seven front-end cash registers at my store. If I am standing at a front-end register facing the customer, to my right there is a conveyor belt on which a customer can place his or her merchandise. In front of me, there is a scanner and a demagnetizer. To the left of the demagnetizer, the counter drops down into the bagging area, which is shaped like a long, square "U." On both sides of the "U," two sets of medium-sized bags hang from bag hooks. After the bagging area, on the other side of the "U," the counter rises up again. On this counter, there is a pin pad that faces the customer. The cash register and register screen are also on this counter, perpendicular to the conveyor belt. After a customer places his or her merchandise on the conveyor belt, I will take each individual item, scan it, and place it in a bag. The conveyor belts at my store sometimes break, especially at Register Five. If a register's conveyor belt is broken, I have to reach in order to grasp the items on the conveyor belt before scanning them. We are trained to bag every item immediately after scanning it, because otherwise it can be difficult to keep track of whether or not we have scanned an item. When scanning and bagging, I must engage in a twisting movement between the conveyor belt, scanner, and bagging area.

5.     Customers will often leave items, such as cat litter and dog food, on the bottom of their carts. If the register I am assigned to that day has a functional hand scanner, I can walk around the counter, bend down, and scan the item's bar code. However, at two or three of the seven registers, the hand scanners are broken, and when I work at those registers, I must bend down and lift the item onto the counter in order to scan it. While I could type in all of the numbers of the bar code into the register instead of scanning the item's bar code, I usually lift the item onto the counter because I find that it takes more time to write down and punch in all of the numbers. Similarly, if a customer leaves an item inside his or her cart, I can sometimes reach over and scan it. However, if the hand scanner is not working, I must step around the counter and lift the item onto the conveyor belt in order to scan the item's bar code. At my store, we do not keep tags of any items at the front-end registers that we can scan instead of scanning the item itself, and so I must always locate and scan the bar code for every item a customer wishes to purchase. After I have scanned and bagged all of a customer's items, I take one or two steps over to the cash register to total up the transaction. If a customer is paying cash, I twist between the customer and the register in order to take money from and give change to the customer. If a customer is elderly or injured, I like to lift and place the bags in the customer's cart after the transaction is complete. I do this fairly frequently because my store is located close to a retirement home, and we assist a large number of elderly customers.

6.     The customer service desk is located three or four steps away from Register Seven, and sixteen to twenty steps away from Register One. I often need to walk to the customer service desk in order to get change, find a supervisor to perform a void or override, or page another employee to assist a customer with bringing items out to the customer's car. Three or four times a shift, in between customers, I also walk to the customer service desk to deliver items that customers have brought up to the registers but do not want to purchase.

7.     Customers frequently ask me for assistance finding items, especially if I am on Register One, which is closest to the store entrance. If I were seated, it would be difficult to point to where the item is located. By standing, I can easily go around the register and indicate to the customer in which direction they should go. If it is not too busy at the front-end registers, I will turn off my register light and walk with the customer to show them exactly where the item is.

8. When there are no customers to serve at the front-end registers, I always stay in motion. I will organize the candy displays, which are located at every register, and check to make sure none of the candy is expired. At every other register, there are soda coolers that I will often straighten. I recently saw a container of eggs in a soda cooler. We are trained to immediately bring any items that need to be refrigerated, such as milk, juice, and cheese, back to their proper spot, and so I carried the eggs back to the refrigerator in the food section of the store. When I do not have customers waiting, I will also pick up stray shopping baskets that have been left around the registers and straighten the magazines, which sit on racks near every register. Cleaning supplies are kept at the customer service desk, and I will walk over to retrieve paper towels and a spray bottle in order to clean my register at least three or four times a day. Recently, I have been cleaning my register even more frequently because it is nearing planting season and many customers are purchasing potting soil. There is also an ICEE machine across from Register Five that I sometimes clean.

9. I work in the Garden department about two shifts per week. During these shifts, I water plants, pull freight from the back room onto the sales floor, and answer any questions customers may have. Because the Garden department sells potting soil and plants, it becomes dirty more frequently than other departments, and so I am constantly cleaning during my shifts. I certainly could not perform my job duties as a Garden Shop Merchandiser while seated, since stocking garden merchandise and cleaning require a great deal of movement.

10. A cashier could not scan and bag items while seated, regardless of whether the conveyor belt at the register is working properly. If a cashier was sitting down, it would be difficult for him or her to hold an item at the correct angle so that the item's bar code could be scanned. The merchandise bags frequently stick together, and so a seated cashier would be constantly getting off a stool to pull the bags apart and re-adjust the bags on the bag hooks. A seated cashier would just drop an item into a bag instead of placing it inside, which could cause a fragile item such as a light bulb to break. I would not be able to complete a transaction while sitting down because I need to take steps in between the scanning area and the cash register. Furthermore, I would not be able to perform my other basic job duties, including straightening and cleaning, while seated.

///

11. Having seats behind the front-end registers could be unsafe for cashiers. I do not believe a seated cashier could lift a heavier item such as cat litter over the scanner. If a cashier tried lifting a heavy item while sitting down, he or she could pull a back muscle. A stool would also be unsafe because a cashier could trip while getting off of the stool and hit his or her head on the cash register.

12. I believe that seated cashiers would be very bad for customer perception. We are trained to greet every customer. If a cashier sat down, he or she may not see an approaching customer to welcome the customer into the store. By standing up, I show customers that I am ready to assist them and that I care about helping them. A seated cashier would look lazy and unprofessional. I have worked hard to form positive relationships with my customers, and I would not want to damage those relationships by sitting down.

13. I usually work seven-hour shifts, during which I receive meal and rest breaks. I normally take my breaks in my store's break room, which contains two tables, eight chairs, a couch, and a recliner chair. Sitting during my meal and rest breaks provides enough time to rest for me, and I would not want to sit more.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 17, 2013, at Petaluma, California.

_Danielle Walsh_
Danielle Walsh

LEGAL_US_W # 74800890.1

# EXHIBIT 15

1  JEFFREY D. WOHL (Cal. State Bar No. 96838)
   JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
2  ELIZABETH J. MACGREGOR (Cal. State Bar No. 267326)
   MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
3  PAUL HASTINGS LLP
   55 Second Street, 24th Floor
4  San Francisco, California 94105
   Telephone: (415) 856-7000
5  Facsimile: (415) 856-7100
   jeffwohl@paulhastings.com
6  jeffmichalowski@paulhastings.com
   elizabethmacgregor@paulhastings.com
7  malainafreedman@paulhastings.com

8  Attorneys for Defendant Kmart Corporation

9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13  SABRINA CLINE AND COLETTE            No. 11-02575-WHA
    DELBRIDGE, individually and on behalf of all
14  others similarly situated,           **DECLARATION OF KRISTINE WARREN**

15                    Plaintiffs,

16          vs.

17  KMART CORPORATION,

18                    Defendant.

19

20

21

22

23

24

25

26

27

28

I, Kristine Warren, declare:

1.      I am a current Kmart employee working in the Checkout Service Associate position.  I have been working at Kmart in this position since approximately May, 2012.  I work at Kmart's Grass Valley location.  I have personal knowledge of the facts set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2.      As a Checkout Service Associate, my job duties include assisting customers, ringing up customers' purchases, bagging merchandise, asking customers for their rewards cards, and collecting payments.

3.      The checkstands at the Grass Valley Kmart have conveyor belts.  The conveyor belt brings the customer's merchandise toward where I stand.  Next to the conveyor belt are a scanner and a demagnetizer pad.  At the end of the demagnetizer pad, there are hooks where bags hang.  Underneath the hooks there is a platform for the bags.  This platform is connected to the long counter.  However, the platform is much lower than the conveyor belt counter.  Connected to the other side of the bagging platform is the area for the pinpad and the cash register.  The counter for the pinpad and the register is taller than the conveyor belt counter.  The register counter sits perpendicular to this bagging platform.

4.      Each checkout transaction requires me to engage in a variety of movements.  I am constantly moving my feet and shuffling from side to side when ringing up a customer.  When I grab the items off of the conveyor belt and scan them, I face the customer.  I also bag items while facing the customer.  Generally, I scan an item, place it in the bag and repeat this process.  I put the items in the bag while the bags hang on the hooks.  When a bag is full, I take the bag off the hooks and leave it on the platform.  The customer usually takes the bag off the platform and puts it into his or her cart.

5.      When I need to use the cash register, I have to turn my body and move my feet in order to face the computer.  Because the checkstands have conveyor belts, I do not have to reach as much for the merchandise that the customers place on the conveyor belt.  However, there are still instances when I must reach.  For example, customers often purchase big or heavy items such as cat litter, dog food, or furniture.  When the customer has a big or heavy item, I tell the customer to leave it in the cart.  If the big or heavy item is in the top of the shopping cart, I reach across the counter with my hand scanner to scan the item.  However, if the customer places the item underneath the cart, I walk around the counter,

bend down, and scan the item with the scanner.

6. When I have a customer who is in a wheelchair or who is elderly, I often walk around the checkstand to the shopping cart. I then help the customer unload his or her items from the cart onto the conveyor belt. I then walk back around the counter to scan the items. After I finish scanning and bagging the items, I help the customer by loading the bags back into the shopping cart.

7. There are times when I am ringing up a customer that I leave my register area. One example is when a customer cannot locate an item in the store. If the store is not too busy, I let my supervisor know that I am going to help the customer locate the item. Also, there are times when a customer has an item that does not state the price. If the store is not busy, I walk to the area of the store where the item is located so that I can check the price.

8. When I do not have customers in line, I perform other duties. For example, when I am not assisting a customer at my checkstand, I approach customers elsewhere in the front-end area to greet them and ask if they need assistance finding an item. If I am not busy, I help the customer locate the items he or she wishes to purchase. Another task I perform is collecting items customers have brought to the checkstands but chosen not to purchase ("go-backs"). Sometimes customers arrive at the checkstand and decide they no longer wish to purchase an item. We have a bin at the checkstand to collect such items. When I have no customers to assist, I take the items in the go-backs bin to the service desk so that other employees can take the items back to the sales floor. Additionally, when there are no customers, I straighten up the aisles and shelves around my checkstand.

9. I feel that it would be extremely difficult to perform my job while seated. With the configuration of the checkstands in my store, the cash register is not close enough to the scanner or bagging area such that a stationary seat would be feasible. I would not be able to both scan merchandise and operate the register from a seat that was only in one part of the checkstand. Moreover, while the scanner and register are farther apart, the standing area behind the counter is long and narrow. Having a seat or a stool would thus impede my mobility, as there would not be very much space to walk around it when going from one end of the register to the other.

10. I also feel that standing is important for a positive customer perception. Working at a job that involves customer service, I feel that face to face communication is very important. If I were in a

2

seat, it would make it more difficult to have the same face to face interaction, because I would not be at the same level as the customer. I also feel that cashiers provide superior customer service when they stand. In working as a cashier, I try to assist the customer in the best way possible. I think that sitting while working as a cashier would negatively impact the customer service Kmart offers its customers. I feel that having a seat would cause me to move more slowly and less efficiently when ringing up customers. This is because I would need to step off the stool every time I needed to walk around the counter. I also feel it is easier to take a step than have to turn while sitting in a seat. If I were to work more slowly, I believe it would cause customers to wait in line for a longer period of time. Customers already complain about having to wait in line as it is. If customers had to wait longer because cashiers used seats, I feel customers would become very frustrated.

11.     I also feel that having a seat behind the checkstand could create a safety hazard. If I am quickly trying to ring up a customer and I drop something on the floor, I could easily fall trying to bend over while in the chair or stool. I could also trip over the seat while stepping off of it when I need to walk around the counter to scan an item or assist a customer.

12.     I generally work about four hours and forty-five minutes on a shift. If I work less than five hours, I receive a fifteen minute rest break. However, if I work a longer shift, I receive two fifteen minute rest breaks and forty-five minutes for lunch. During my breaks I either use the break room or go outside. Generally, I sit during my breaks. In the break room there are tables, chairs, and a refrigerator. I have never had a problem finding a place to sit when using the break room. At the end of my shift, I feel that I have had plenty of rest.

13.     I have never used a seat while working as a cashier. I have never requested a seat and I do not want a seat. I do not see how I can perform my job duties while seated.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April __, 2013, at Grass Valley, California.

_Kristine Warren_

LEGAL_US_W # 74876032.1