JEFFREY D. WOHL (Cal. State Bar No. 096838)
ZACHARY P. HUTTON (Cal. State Bar No. 234737)
ELIZABETH J. MACGREGOR (Cal State Bar No. 267326)
MALAINA R. FREEDMAN (Cal. State Bar No. 286110)
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California  94105-3441
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100
jeffwohl@paulhastings.com
zachhutton@paulhastings.com
elizabethmacgregor@paulhastings.com
malainafreedman@paulhastings.com

Attorneys for Defendant Kmart Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA CLINE and COLETTE DELBRIDGE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KMART CORPORATION,<br><br>Defendant. | No. 11-02575-WHA<br><br>**DEFENDANT KMART CORPORATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     Thursday, June 6, 2013<br>Time:     8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:    Hon. William H. Alsup<br><br>Trial Date:   September 23, 2013 |

1

## TABLE OF CONTENTS

2

*Page*

3

4    Table of Authorities ...................................................................................................................ii

5    I.      INTRODUCTION/SUMMARY OF ARGUMENT ...................................................1

6    II.     THE LAW OF THE CASE DOCTRINE APPLIES HERE BECAUSE PLAINTIFFS
             HAVE NOT PRESENTED ANY DIFFERENT OR NEW EVIDENCE FROM WHAT
             WAS INTRODUCED—AND REJECTED—AT THE GARVEY TRIAL ....................2

7    III.    EVEN APART FROM THE LAW OF THE CASE DOCTRINE, PLAINTIFFS'
             OPPOSITION FAILS TO RAISE A TRIABLE ISSUE OF FACT .............................4

8            A.     Plaintiffs Have the Burden of Presenting Evidence Raising a Triable Issue of Fact ...........4

9            B.     Plaintiffs' Declarations Present Only Speculation That They Could Have Worked
                    While Seated, While Their Deposition Testimony Establishes That a Seat Is Not
10                  Feasible ...........................................................................................................6

11           C.     Plaintiffs Have Not Identified What Would Constitute Suitable Seating at Their
                    Stores ..............................................................................................................7

12           D.     The Customer Touch Point Initiative Is Red Herring ...........................................7

13   IV.     CLINE CONCEDES SHE LACKS STANDING TO PROSECUTE HER CLAIM, AND
             SHE WOULD REMAIN JUDICIALLY ESTOPPED FROM PURSUING THE CLAIM
14           EVEN IF SHE REOPENED HER BANKRUPTCY CASE.........................................8

15           A.     Because Her Claim Passed to Her Bankruptcy Estate When She Filed for
                    Bankruptcy Protection, Cline Lacks Standing to Pursue Her Claim ........................8

16           B.     Cline Has No Grounds to Avoid Application of Judicial Estoppel ..........................9

17                  1.     For Purposes of Judicial Estoppel, It Is Immaterial That Cline Has Applied
                           to Reopen her Bankruptcy....................................................................9

18                  2.     Cline's Contention That She "Never Intended to Deceive Anyone" in
                           Failing to Disclose Her Claims Against Kmart Is Irrelevant and
19                         Unsupported by the Evidence ...............................................................10

20                         a.     Intent to Deceive Is Not a Required or Dispositive Factor For the
                                  Application of Judicial Estoppel in the Bankruptcy Context.................10

21                         b.     Even If Cline's Alleged Intent Were Relevant, the Evidence Shows
                                  She Intended to Conceal Her Claim Against Kmart ..........................10

22                                (1)   Cline Was Fully Aware of Her Claim Against Kmart When
                                       She Filed For Bankruptcy Protection, as She Already Had
23                                     Assisted in the Prosecution of Garvey's Class Claim.................11

24                                (2)   Cline Stood to Benefit From Concealing Her Claims and
                                       Thus Had Motive to Assert Inconsistent Positions .....................13

25   V.      CONCLUSION....................................................................................................15

26

27

28

1

**TABLE OF AUTHORITIES**

2

*Page*

3

4

**Cases**

5

*Ah Quin v. County of Kauai D.O.T.*,
433 B.R. 320 (D. Haw. 2010) .........................................................................................12

6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .........................................................................................................5

7

*Arpin v. Santa Clara Valley Transp. Agency*,
261 F.3d 912 (9th Cir. 2001) ...........................................................................................5

8

9

*Arruda v. C&H Sugar Co.*,
2007 U.S. Dist. LEXIS 16519 (E.D. Cal. 2007) ......................................................11, 14

10

*Barger v. City of Cartersville*,
348 F.3d 1289 (11th Cir. 2003) .......................................................................................9

11

*Barrett v. Baylor*,
457 F.2d 119 (7th Cir. 1972) .......................................................................................2, 3

12

*Bradley v. Harcourt, Brace & Co.*,
104 F.3d 267 (9th Cir. 1996) ...........................................................................................6

13

14

*Caviness v. England*,
2007 U.S. Dist. LEXIS 32696 (E.D. Cal. May 3, 2007).............................................12, 13

15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................4, 5

16

*Eastman v. Union Pac. R.R. Co.*,
493 F.3d 1151 (10th Cir. 2007) ......................................................................9, 10, 14, 15

17

*Federal Ins. Co. v. Burlington Northern & Santa Fe Ry. Co.*
270 F.Supp.2d 1183 (C.D. Cal. 2003) .............................................................................5

18

*Garvey v. Kmart Corp.*,
2012 U.S. Dist. LEXIS 178920 (N.D. Cal. 2012) ................................................. passim

19

20

*Goodman v. Takeda Pharmaceuticals North America, Inc.*,
2013 U.S. Dist. LEXIS 42422 (D. Nev. 2013) ..............................................................10

21

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) .............................................................................9, 10, 11

22

*Hutchinson v. United States*,
838 F.2d 390 (9th Cir. 1988) ...........................................................................................5

23

24

*In re Coastal Plains, Inc.*,
179 F.3d 197 (5th Cir. 1999) ....................................................................................10, 15

25

*Intel Corp. v. Hartford Accident & Indem. Co.*,
952 F.2d 1551 (9th Cir. 1991) .........................................................................................5

26

*Kilby v. CVS*,
2012 U.S. Dist. LEXIS 76507 (S.D. Cal. 2012) ...........................................................4, 7

27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..........................................................................................................5

28

KMART'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
U.S.D.C., N.D. Cal., No. 11-02575-WHA

# TABLE OF AUTHORITIES
*(cont'd)*

Page

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)........................................................................................................10

*Schuler v. Chronicle Broadcasting Co.*,
  793 F.2d 1010 (9th Cir. 1986) ........................................................................................6

*United States v. Rivera-Martinez*,
  931 F.2d 148 (1st Cir. 1991)......................................................................................2, 4

*Wietecha v. Dollarhide Fin. Group, Inc.*,
  2006 U.S. Dist. LEXIS 44562 (D. Ariz. 2006)..................................................11, 12, 14

**Statutes, Rules, and Regulations**

11 U.S.C.
  § 521(a)(1) ......................................................................................................................15
  § 541(a) ...........................................................................................................................15

Wage Order 7-2001
  § 14(A) .........................................................................................................................5, 7
  § 14(B) ..............................................................................................................................7

LEGAL_US_W # 75161371.1

I.     INTRODUCTION/SUMMARY OF ARGUMENT

Citing no law and presenting no evidence, plaintiffs argue that the Court should deny summary judgment based solely on their subjective beliefs that they could have performed their job duties while seated. Plaintiffs have failed to meet their burden of showing the existence of a triable issue of fact. The Court should therefore grant summary judgment.

Though plaintiffs argue that the law of the case doctrine does not apply here because Kmart did not agree in advance that the judgment of the Tulare store would necessarily apply state-wide, plaintiffs misstate both the doctrine and the position taken by Kmart. Both Kmart and the Court agreed that the judgment of Tulare would apply insofar as an issue decided at the Garvey trial would be compelling in all cases. This is the law of the case doctrine. In order to avoid the judgment of the Garvey trial, plaintiffs must produce substantially different and new evidence. Instead, plaintiffs continue to present the same old evidence that this Court already rejected. They have not come forward with any facts that could result in a different outcome the second time around. As a result, the law of the case doctrine bars their claim.

Even if this Court should decline to follow the law of the case doctrine, however, Kmart is still entitled to summary judgment because plaintiffs have failed to make any showing on issues for which they would carry the burden of proof at trial. Plaintiffs' *only* evidence is their own subjective belief that they could have worked while seated. This is no evidence at all, especially since plaintiffs testified at deposition that they performed many duties that require them to stand. Plaintiffs also make no showing as to what would constitute a suitable seat, and how such a seat would work in Kmart's register configurations. Plaintiffs have therefore failed to rebut Kmart's showing that no triable issue of fact exists in this case.

Finally, Cline concedes she lacks standing to pursue her claim, and although she argues she "never intended to deceive anyone" by failing to disclose her claim against Kmart in bankruptcy, that is not a defense to judicial estoppel, which would continue to bar her claim even if she reopened her bankruptcy case. Summary judgment against Cline is appropriate on this basis alone.

///

///

## II. THE LAW OF THE CASE DOCTRINE APPLIES HERE BECAUSE PLAINTIFFS HAVE NOT PRESENTED ANY DIFFERENT OR NEW EVIDENCE FROM WHAT WAS INTRODUCED—AND REJECTED—AT THE GARVEY TRIAL

Under the law of the case doctrine, "[t]he unreversed decision on a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit." *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972). "[I]ssues, once decided, should not be reopened '*unless the evidence on a subsequent trial was substantially different*, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.'" *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991) (citations omitted; emphasis supplied). This Court has already recognized that new and substantially different evidence is necessary for plaintiffs to continue to pursue their claim:

> … They can come in with a new expert, a new program, a new proposal. I gave serious consideration to what they said, but the *record didn't support the proposal* they had. The next record might. It's not necessarily governed by the—*we are going to have a new record*, Mr. Wohl. It's going to be new experts, new witnesses, everything."

Transcript of Proceedings (ECF 258), 4:13-19 (Jan. 10, 2013) (emphasis supplied); *see also Garvey v. Kmart Corp.*, 2012 U.S. Dist. LEXIS 178920, at *39 (N.D. Cal. 2012) ("[B]oth sides are invited to present *more complete evidence* on a lean-stool alternative as described above (or variations thereon), in addition to any other evidence counsel wishes to present.") (emphasis supplied); Trial Tr. (ECF 206) 70:2-6 (Court: "So that means that if you win, we are going to store number two, and you can't argue we've already decided the issues, *unless there's something about the way in which the Court decides the issues that is compelling in all cases*.") (emphasis supplied).

The Court presided over a six-day bench trial that resolved many outstanding questions as to whether the nature of the work of Kmart cashiers would reasonably permit the use of a seat. In particular, the Court determined that "[s]tanding tasks include processing heavy, large, and/or awkward items; scanning items in a customer's cart with the hand scanner; looking inside closed items in a customer's cart; straightening the checkout lane when customers are not present; and retrieving additional change for the cash register .... [E]ven if seating were allowed, cashiers would be up (and down) frequently to perform the tasks that require standing." *Garvey*, at *19; *see also id.* at *31-32 ("It would still be necessary, however, for cashiers to stand during the following operations: (1) processing

heavy and bulky items; (2) stepping through the pass-through and then into the customer lane to check the bottom of the basket and/or to scan a large item left in the shopping cart; (3) to deposit filled bags on the bagging table or in the cart; (4) to assist customers with the pin pad; (5) to stretch for items near the receiving end of the counter for incoming merchandise."). This holding is law of the case. *See Barrett*, 457 F.2d at 123.

In order to prevail now, plaintiffs must show that their work experiences differed substantially from those of Tulare cashiers. They have not done so. Instead, plaintiffs testified that they repeatedly engaged in "standing only" tasks throughout their shifts, including:

- running fast-paced and efficient registers, which DelBridge admits requires standing, and which Cline states she does not know she could have done as effectively while seated, DelBridge Depo., 151:16-152:5, 153:3-12; Cline Depo., 236:6-18;

- lifting heavy (between 25 to 30 pounds) or fragile items, DelBridge Depo., 157:1-12, 13-15; Cline 184:8-18;

- moving and stepping around the check stand while scanning and bagging items, DelBridge Depo., 155:24-156:5; Cline Depo., 122:5-6, 184:19-22;

- placing bags on a bagging table or in a customer's cart, or handing bags to customers, DelBridge Depo., 99:21-100:7, 150:6-12; Cline Depo., 184:19-22, 236:3-5;

- stepping into the aisle to invite customers to their registers, DelBridge Depo., 116:8-16; Cline Depo, 206:20-207:9, 211:13-20;

- assisting customers in taking merchandise to their cars, DelBridge Depo., 146:2-11;

- performing "Bottom of the Basket" ("BOB") and "Look Inside Always" ("LISA"), DelBridge Depo., 113:14-16, 113:23-115:1; Cline Depo., 135:8-9, 10-13;

- cleaning and straightening their register areas, DelBridge Depo., 137:1-19, 138:3-8, 139:9-18, 148:12-17, 157:16-18; Cline Depo., 171:14-25, 172:1-7; and

- performing other duties away from their check stands, DelBridge Depo., 69:22-70:7, 80:20-24, 89:3-10, 138:15-21, 147:13-18, 148:1-3, 156:6-18, 158: 13-15; Cline Depo., 160:13-24, 166:13-167:4, 167:10-17, 168:24-169:7, 169:15-170:9, 170:17-23; 172:11-20, 207:18-23.

1   And, of course, both Cline and DelBridge recognize that Kmart's expectation is that cashiers should

2   provide excellent customer service.  DelBridge Depo., 132:22-133:23, 168:7-9, 18-21, 169:14-22; Cline

3   Depo., 86:17-23, 206:2-9, 217:21-24, 218:22-219:4.  Without new evidence as to how their experiences

4   at Kmart were materially different from cashiers' whose claims have already been resolved against

5   them, no disputed material issue of fact exists as to whether the nature of DelBridge and Cline's work

6   reasonably permits the use of a seat.[1]

7        Though plaintiffs' opposition alludes to the fact that the Court "left open the possibility" of a

8   lean-stool theory, Opptn. at 6, and the fact that nine Kmart stores in California use checkstands with

9   conveyor belts, *id.* at 4, they make no effort to show *how* a lean-stool would reasonably permit cashiers

10   to perform their job duties while seated, or *what kind of a seat* could reasonably be provided at

11   checkstands with conveyor belts.  Indeed, they have supplied no evidence on those subjects at all.  As

12   plaintiffs instead rely only on evidence that the Court previously considered and rejected, and have

13   failed to produce any new evidence—let alone "substantially different" evidence—the law of the case

14   doctrine controls.  *Rivera-Martinez,* 931 F.3d at 151.  Summary judgment is therefore appropriate.

### III.   EVEN APART FROM THE LAW OF THE CASE DOCTRINE, PLAINTIFFS' OPPOSITION FAILS TO RAISE A TRIABLE ISSUE OF FACT

#### A.   Plaintiffs Have the Burden of Presenting Evidence Raising a Triable Issue of Fact.

18        In a motion for summary judgment, the moving party bears the initial burden to demonstrate the

19   absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

20   moving party, however, does not bear the burden to disprove claims on which the opposing party will

21   have the burden of proof at trial.  *Id.*  The moving party need only show that there is an absence of

22   evidence to support the essential elements of the opposing party's case.  *See id.* at 325; *Kilby v. CVS*,

23   2012 U.S. Dist. LEXIS 76507, at *8 (S.D. Cal. 2012) ("The moving party's burden may also be met by

24   showing that there is an absence of evidence to support the non-moving party's case.").

---

[1]       Contrary to plaintiffs' suggestion, Kmart is *not* seeking summary judgment "as to all stores in California."  Opptn. at 2.  Instead, as Kmart clearly states in its motion, Kmart only seeks summary judgment against Cline and DelBridge, the only two named plaintiffs.  Mtn. at 6.  As the evidence clearly demonstrates, Kmart is entitled to summary judgment against them, as their work experiences at Kmart were not materially different from the experiences of Tulare cashiers, whose claims have already been adjudicated in favor of Kmart.

1    Once the moving party has met its burden, the opposing party must show that there is a genuine

2    issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

3    In carrying this burden, the opposing party must present *significant and probative* evidence to support its

4    claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

5    To avoid summary judgment, a plaintiff must do "more than simply show that there is some

6    metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "'The mere existence of a

7    scintilla of evidence in support of the opposing party's position is not sufficient,'" and factual disputes

8    whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion

9    for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001)

10   (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

11    Here, plaintiffs bear the burden of proving the elements of their case, and to meet that burden

12   they had to present evidence showing that: (i) the nature of the work reasonably permits the use of a

13   seat; and (ii) a suitable seat exists. *See* Wage Order 7-2001, Section 14(A); *Garvey*, 2012 U.S. Dist.

14   LEXIS 178920, at *24 ("[A]s to the proposed design modification, plaintiff has the burden to prove that

15   'suitable seating' exists.  Suitable seating must mean safe seating.").  Plaintiffs have failed to come

16   forward with any (let alone significant and probative) evidence showing that genuine issues of fact exist

17   as to the elements of their claim.  Where a party with the burden of proof fails to come forward with

18   evidence supporting her claim, summary judgment is appropriate. *See Celotex Corp*, 477 U.S. at 323-

19   324 (summary judgment appropriate against "a party who fails to make a showing sufficient to establish

20   the existence of an element essential to that party's case, and on which that party will bear the burden of

21   proof at trial"); *Hutchinson v. United States*, 838 F.2d 390, 393 (9th Cir. 1988) ("Summary judgment is

22   appropriate when a party fails to make a showing sufficient to establish the existence of an element

23   which is essential to his case and for which he would bear the burden of proof at trial."); *Anderson*, 477

24   U.S. at 256 ("'The movant has the burden of showing that there is no genuine issue of fact, but the

25   plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a

26   jury verdict."); *Federal Ins. Co. v. Burlington N. & Santa Fe Ry. Co.* 270 F.Supp.2d 1183, 1185 (C.D.

27   Cal. 2003) ("The non-moving party must make an affirmative showing on all matters placed in issue by

28   the motion as to which it has the burden of proof at trial")

KMART'S REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT
U.S.D.C., N.D. Cal., No. 11-02575-WHA

LEGAL_US_W # 75161371.1

**B.      Plaintiffs' Declarations Present Only Speculation That They Could Have Worked While Seated, While Their Deposition Testimony Establishes That a Seat Is Not Feasible.**

In support of their position that the nature of the work of cashiers may reasonably be performed while seated, plaintiffs submit no evidence other than their speculation that they could have worked while seated.  ECF 325-1, Exh. 3, ¶ 3, Exh. 4, ¶ 6.  Indeed, on this point, DelBridge's declaration says nothing more than, "I certainly believe I could have performed my cashiering duties while seated, and I think I would have benefitted [*sic*] from having a seat available while performing cash register operations."  *Id.*, Exh. 4, ¶ 6.  Plaintiffs' speculation is insufficient to defeat summary judgment.  *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("Bradley claims she had been performing her job adequately and had received no feedback indicating otherwise. However, an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact."); *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) ("Plaintiff denies the credibility of this evidence and says repeatedly that she 'felt' competent and was 'confident of [her] skills.'  These subjective personal judgments do not raise a genuine issue of material fact.").[2]

Plaintiffs' own description of their regular work duties shows they could not have used a seat.  *See* text at 3-4, *supra*.  As this Court found, the duties plaintiffs describe are standing tasks that do not reasonably permit the use of a seat.  *See Garvey*, 2012 U.S. Dist. LEXIS 178920, at *19, *31-32 (standing tasks include processing heavy, large, and/or awkward items; scanning items in a customer's cart with the hand scanner; looking inside closed items in a customer's cart; straightening the checkout lane when customers are not present; retrieving additional change for the cash register; depositing filled bags on the bagging table or in the cart; assisting customers with the pin pad; and stretching for items near the receiving end of the counter for incoming merchandise).  Whatever plaintiffs' subjective beliefs may be, the objective facts are clear: Their duties did not reasonably permit the use of a seat.

---

[2]      Citing to this Court's previous summary judgment order, plaintiffs argue that this Court has found that a cashier's first-hand knowledge about his or her job functions could reasonably predict how sitting would have affected their performance.  Opptn. at 9.  But again, plaintiffs fail to acknowledge that, following a bench trial, the Court ruled that the nature of the work of Tulare cashiers does not permit a seat, despite the subjective beliefs the cashiers expressed at trial.  *Garvey*, 2012 U.S. Dist. LEXIS 178920, at *2, *37.  At this point in the case, plaintiffs must produce more than their mere beliefs that they could have worked while seated.  They must produce evidence showing how the nature of their work may reasonably be performed with a suitable seat.  They have failed to do so.

LEGAL_US_W # 75161371.1

1

2

### C. Plaintiffs Have Not Identified What Would Constitute Suitable Seating at Their Stores.

3

In its findings of fact following the Garvey trial, the Court left open the possibility of a lean-stool

4

theory, but plaintiffs' opposition contains no facts supporting this theory. They do not explain how a

5

lean stool could be incorporated into Kmart's checkstand designs, or would allow cashiers to reasonably

6

perform their job duties while seated. They also fail to present any other evidence of a suitable seat.[3]

7

Even if plaintiff had presented such evidence, however, Kmart would still be entitled to summary

8

judgment, as a lean-stool theory would support, at most, a section 14(B) claim. That is because a lean-

9

stool would be used only when a cashier was in between assisting customers and not performing any

10

other work duties (which, in fact, the evidence shows, occurs rarely if at all, and only for some

11

cashiers[4]); *i.e.*, a lean stool would, at most, be used only when cashiers were not actively engaged in

12

their work duties. *See Kilby*, 2012 U.S. Dist LEXIS 76507, at *12 ("In direct contrast to subsection (A),

13

subsection (B) is limited to only those instances when 'the nature of the work requires standing.' ... It

14

conditions the use of a seat on the employee 'not being engaged in the active duties of their

15

employment.'"). Plaintiffs, however, have formally abandoned a section 14(B) theory, ECF 278 at 6,

16

and the Court has accepted plaintiffs' representation that they have abandoned this theory, ECF 289 at 4)

17

("Plaintiff will be held to her representation and will be permitted to amend on the condition that the

18

amended complaint specify that the plaintiffs are only seeking relief under Section 14(A).").

19

Plaintiffs present no evidence regarding a lean-stool theory and any such evidence would only

20

support an abandoned claim. They cannot defeat summary judgment without evidence of what would

21

constitute a suitable seat.

22

### D. The Customer Touch Point Initiative Is Red Herring.

23

For the reasons explained in Kmart's opposition to Plaintiffs' Motion for Relief from Judgment

24

---

[3]    DelBridge's only proposed seat at deposition was a chair with a swivel top, which this court has

25

already found unsafe. DelBridge Depo., 160:24-161:11, 161:23-162:15; *Garvey*, 2012 U.S. Dist. LEXIS 178920, at *23. While Cline had the idea of a seat "that would flop down and go back up out of the

26

way," plaintiffs have failed to make any showing that such a seat would be both safe and suitable in either Cline's register configuration or in any other configuration. Cline Depo., 239:10-22.

27

[4]    *See* Class Cert. Opptn. (ECF 315) at 12 (*citing* Kwon Decl. (ECF 320), ¶¶ 13, 14, Figs. 1, 4), 14 (*citing* Declaration Compendium (ECF at 322), Balandran ¶ 7, Carson ¶ 5, Clabough, ¶ 4, Judkins, ¶ 5,

28

Mergele, ¶ 6, Walsch, ¶ 8; Kwon Decl., ¶¶ 14, 23, 24, Figs. 10, 11).

LEGAL_US_W # 75161371.1

1   (ECF 328), plaintiffs' allegation that Kmart withheld evidence of belted checkstands or the Customer

2   Touch Point Initiative is completely untrue.  It also is beside the point: the contention does not explain

3   why plaintiffs have no evidence to oppose summary judgment now.  Establishing what constitutes

4   suitable seating is an element of plaintiff's burden of proof.  *See Garvey*, 2012 U.S. Dist. LEXIS

5   178920, *24 ("[A]s to the proposed design modification, plaintiff has the burden to prove that 'suitable

6   seating' exists.  Suitable seating must mean safe seating.").  Kmart disclosed evidence pertaining to

7   belted checkstands nearly a year before the Garvey trial.  Kmart's Opptn. to Motion for Relief from

8   Judgment (ECF 328), 3:1-4:27).  Moreover, Cline worked at the Petaluma store, which used belted

9   checkstands.  Cline Depo., 129:16-25.  Plaintiffs thus may not blame Kmart for their failure to adduce

10  evidence.  Despite ample opportunity, plaintiffs present no evidence as to what would constitute a

11  suitable seat in this design.

12          Nor have plaintiffs explained how any suitable seat could be incorporated into a belted

13  configuration such that a cashier could perform her work duties while seated.  And the evidence before

14  the Court shows that standing is required, whether at a belted or unbelted checkstand.  *See* Text at 3-4,

15  *supra*; Class Cert Opptn (ECF 316), p. 9-10 (*citing* Fernandez Decl. (ECF 318), ¶ 27, 28, Declaration

16  Compendium (ECF 322); p. 27 (*citing* Kwon Decl. (ECF 320), ¶ 25; Declaration Compendium (ECF

17  322).

18          Because plaintiffs have produced no evidence regarding suitable seating (be it lean stools, seats

19  at belted checkstands, or otherwise), they have failed to carry their burden with regard to suitable

20  seating.  Kmart's motion therefore should be granted.

21  **IV.    CLINE CONCEDES SHE LACKS STANDING TO PROSECUTE HER CLAIM, AND
22          SHE WOULD REMAIN JUDICIALLY ESTOPPED FROM PURSUING THE CLAIM
        EVEN IF SHE REOPENED HER BANKRUPTCY CASE**

23          **A.      Because Her Claim Passed to Her Bankruptcy Estate When She Filed for
24                  Bankruptcy Protection, Cline Lacks Standing to Pursue Her Claim.**

25          In its opening papers, Kmart established that after she left Kmart, and therefore after her claim

26  fully arose, Cline filed for protection under the bankruptcy laws, and at that moment, her claim

27  automatically passed to her bankruptcy estate.  *See* Mtn. (ECF 309) at 24.  As a consequence, Cline lost

28  standing to pursue the claim.  *Id*. 24-27.  Nowhere in her opposition does Cline dispute any of this, and

1    instead she acknowledges her lack of standing by contending that she plans to seek to re-open her

2    bankruptcy case and disclose the claim in the hope of persuading the trustee to abandon it and restore

3    her standing to pursue it.  *See* Opp. (ECF 325) at 10.  Cline's future plans do nothing to disturb the

4    undisputed fact that she currently lacks standing to pursue the claim, and is subject to dismissal for that

5    reason.

6         **B.    Cline Has No Grounds to Avoid Application of Judicial Estoppel.**

7              **1.    For Purposes of Judicial Estoppel, It Is Immaterial That Cline Has Applied
                       to Reopen her Bankruptcy.**

8

9         Cline also hopes that by reopening her bankruptcy case, she will avoid the doctrine of judicial

10   estoppel.  But courts agree that judicial estoppel still applies even if the plaintiff, confronted with his or

11   her failure to disclose claims in bankruptcy, then seeks to reopen the bankruptcy estate.  Like Cline, the

12   plaintiff in *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003), sought to re-open her

13   bankruptcy case only after the defendants moved for summary judgment against her claim based on

14   judicial estoppel.  The plaintiff's effort to re-open her bankruptcy case, the court held, "hardly casts her

15   in the good light she would like."

16              Allowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy
               filings, only after his omission has been challenged by an adversary, suggests that a
17             debtor should consider disclosing potential assets only if he is caught concealing them.
               This so-called remedy would only diminish the necessary incentive to provide the
18             Bankruptcy Court with a truthful disclosure of the debtor's assets. As such, [the
               plaintiff's] disclosure upon re-opening the bankruptcy estate deserves no favor.
19

20   *Id.* at 1297 (internal quotations marks and citation omitted).

21        Even more dramatically, the plaintiff in *Eastman v. Union Pacific Railroad Co.*, 493 F.3d 1151

22   (10th Cir. 2007), confronted with his failure to disclose his claims, not only re-opened his bankruptcy

23   case, but made his creditors whole.  This, the court ruled, was "inconsequential," as judicial estoppel

24   may be warranted "even if the discharge is later vacated."  *Id.* at 1160 (quoting *Hamilton v. State Farm

25   Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001)).

26        Thus, the fact that Cline now seeks to reopen her bankruptcy case makes no difference to the

27   applicability of judicial estoppel.

28   ///

LEGAL_US_W # 75161371.1

1

2

2.    **Cline's Contention That She "Never Intended to Deceive Anyone" in Failing to Disclose Her Claims Against Kmart Is Irrelevant and Unsupported by the Evidence.**

3

4

a.    **Intent to Deceive Is Not a Required or Dispositive Factor For the Application of Judicial Estoppel in the Bankruptcy Context.**

5

Cline alleges that her failure to disclose her claims against Kmart was not the result of any intent

6

to mislead the bankruptcy court or her creditors.  She thus implies (without citing any law) that judicial

7

estoppel does not apply absent a finding of an intent to deceive or bad faith.  But a finding of intentional

8

deception or malfeasance is not a requirement for the application of judicial estoppel.  *Goodman v.*

9

*Takeda Pharm. N. Am., Inc*., 2013 U.S. Dist. LEXIS 42422, at *7 (D. Nev. 2013) ("The application of

10

judicial estoppel in the bankruptcy context does not require that a debtor intentionally omit potential

11

claims from his disclosures"); *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Hamilton*, 270

12

F.3d at 784 (applying judicial estoppel without imposing bad faith or intentional deception as

13

prerequisite; "We now hold that [the plaintiff] is precluded from pursuing claims about which he had

14

knowledge, but did not disclose, during his bankruptcy proceedings . . . ."); *Eastman*, 493 F.3d at 1157

15

("Unfortunately for [the judicially estopped plaintiff], our sister circuits, for what seem to us sound

16

reasons, have not been overly receptive to debtors' attempts to recover on claims about which they

17

'inadvertently or mistakenly' forgot to inform the bankruptcy court.").

18

b.    **Even If Cline's Alleged Intent Were Relevant, the Evidence Shows She Intended to Conceal Her Claim Against Kmart.**

19

20

Even assuming *arguendo* that this Court should consider intent, that factor, too, weighs

21

overwhelmingly in favor of applying judicial estoppel.  For those courts that have considered intent as

22

part of the judicial-estoppel analysis, in the application of "judicial estoppel *for bankruptcy cases*, the

23

debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor

24

either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."  *In re Coastal*

25

*Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) (emphasis in original).  Neither definition of inadvertence

26

is satisfied here.

27

///

28

///

1

2

                              **(1)**        **Cline Was Fully Aware of Her Claim Against Kmart When She Filed For Bankruptcy Protection, as She Already Had Assisted in the Prosecution of Garvey's Class Claim.**

3        Courts refuse to find "inadvertence" where a plaintiff had clear knowledge of the claims that she

4 failed to disclose to the Bankruptcy Court.  For example, in *Arruda v. C&H Sugar Co.*, 2007 U.S. Dist.

5 LEXIS 16519 (E.D. Cal. 2007), the court, applying Ninth Circuit authority, found that under *Hamilton*,

6 the plaintiff's failure to list the discrimination claims he had initiated prior to filing for Chapter 7

7 bankruptcy protection was not a "mistake" because the plaintiff was well aware of his claims when he

8 filed his bankruptcy petition.  *Arruda*, at **15-16.  The court found that the plaintiff could not claim he

9 was unaware of his pending claims against the defendants because he had already filed two

10 administrative complaints with the DFEH and had received right-to-sue notices informing him of his

11 right to initiate a civil action against the defendants.  *Id.*  Thus, the plaintiff not only knew of the claims,

12 thus undermining his claim of "mistake," but "the possibility of receiving bankruptcy protection while at

13 the same time asserting those claims [also] supplied a motive to conceal them."  *Id.* at *16-17.  The court

14 found that such knowledge and motive made plaintiff's actions "intentional" and precluded any finding

15 of "inadvertence": "The omission of the present claim during Plaintiff's bankruptcy was intentional

16 because he had knowledge of the underlying facts giving rise to the potential claim and failed to disclose

17 the claim."  *Id.* at *17 (emphasis supplied).

18        Similarly, in *Wietecha v. Dollarhide Financial. Group, Inc.*, 2006 U.S. Dist. LEXIS 44562, at

19 *9-12 (D. Ariz. 2006), the court found that the plaintiff's knowledge of his undisclosed defamation,

20 negligence, and Family Medical Leave Act claims, along with the attendant motive to conceal them

21 from the Bankruptcy Court, negated a finding of "inadvertence," and held that he was judicially

22 estopped from pursuing his claims.  In so finding, the court rejected the plaintiff's argument that it could

23 not apply judicial estoppel unless he asserted the inconsistent position in "bad faith" and with an intent

24 to play fast and loose with the court.  Instead, the court noted that the Ninth Circuit essentially had

25 adopted the approach of finding inadvertence only where the debtor lacks knowledge of the undisclosed

26 claim or has no motive for its concealment.  *Id.* at *10-11.  The court further noted that Ninth Circuit

27 precedent instructs courts to apply judicial estoppel whenever the debtor has knowledge of the facts to

28 know a claim exists during the pendency of a bankruptcy claim.  *See id.*

LEGAL_US_W # 75161371.1

In *Wietecha*, several facts showed that the plaintiff had enough knowledge to require disclosure of his claims, including that his claims were based on events that occurred prior to plaintiff's filing for bankruptcy protection and that the plaintiff did not dispute he was aware of his alleged claims prior to filing his bankruptcy petition. *Id.* at *11. The plaintiff was undeniably aware of his claims, failed to disclose them, and as such, his nondisclosure could not have been through inadvertence because he "had both knowledge of the claims and a motive for concealment." *Id.* at *12. *See also Caviness v. England*, 2007 U.S. Dist. LEXIS 32696, *38-39 (E.D. Cal. 2007) ("Plaintiff does not deny having knowledge of his discrimination claims during the pendency of his bankruptcy proceedings. He was actively pursuing those claims during the relevant time. ... The facts and circumstances of this case contradict plaintiff's contentions that he had no motive for concealment of assets and that his failure to disclose the [discrimination] claims was inadvertent"); *Ah Quin v. County of Kauai D.O.T.*, 433 B.R. 320, 325 (D. Haw. 2010) ("Here, [the plaintiff] Ah Quin's failure to disclose was not inadvertent or mistaken. Because this lawsuit, which Ah Quin believes to be worth more than $6 million, was pending before she filed for bankruptcy, Ah Quin did not 'lack[] knowledge of the undisclosed claims.'" And "'[i]t is impossible to believe that such a sizable claim could have been overlooked when [Ah Quin] was filling in the bankruptcy schedules.'") (citations omitted; some alterations in original).

Here, Cline filed for bankruptcy well after she was aware of her claim against Kmart. In fact, Cline testified at her deposition that she failed to disclose her claim in her bankruptcy filing, not because she was unaware of the claim, but "because [she] didn't know how far it was going to go." Cline Depo., 96:4-8. She further testified that she was represented by counsel at the time she filed a declaration in opposition to Kmart's motion for summary judgment against Garvey and in support of Garvey's motion for class certification. *Id.*, 75:24-79:1, Exhs. 4, 5. Furthermore, Cline's counsel confirmed they represented Cline at the time:

> MR. WOHL:      You're saying you represented her at the time [she gave her declaration in support of Garvey]?
>
> MR. RIGHETTI:   Yes.

*Id.*, 78:12-15. Plaintiff further testified at deposition that she understood the nature of the Garvey lawsuit, and understood she was a putative class member:

| | |
|---|---|
| Q. | So did you—apart from anything your lawyers told you—well, first off, when you signed the declaration, did it have the cover page showing a case caption? |
| A. | Yes. |
| Q. | And so did you understand that the declaration was going to be used in support of the lawsuit that was pending against Kmart? |
| A. | Yes. |
| Q. | And you understood the lawsuit was about the issue of whether Kmart was supposed to give cashiers seats? |
| A. | Yes. |
| Q. | Including yourself— |
| A. | Yes. |
| Q. | —as a member of the proposed class, correct? |
| A. | Yes. |

*Id*, 79:2-18. Thus, despite being fully aware of her claim as early as March 16, 2012, Cline nevertheless failed to disclose the claim in her bankruptcy proceedings, when she was separately represented by bankruptcy counsel. *Id.*, 75:24-79:1, Exhs. 4, 5; 96:4-8.

Given this record, Cline's current contention that she "had not been advised that she had a potential claim against Kmart at the time she filed her bankruptcy," Opptn. at 10, is blatantly untrue, and yet another attempt to benefit from yet another inconsistent position. In other words, Cline continues to play fast and loose with the courts, which is what judicial estoppel is intended to remedy.

### (2) Cline Stood to Benefit From Concealing Her Claims and Thus Had Motive to Assert Inconsistent Positions.

Cline's failure to disclose her claim against Kmart also was not inadvertent because she stood to benefit from her lack of disclosure and thus had motive to seek the benefits of asserting inconsistent positions. Cline informed the bankruptcy court that she had no claims or other assets to disclose, thus providing the court with more reason why it should discharge her debts. She stands to benefit from a windfall by now asserting claims and seeking to obtain the full fruits of any recovery she may obtain against Kmart without making any such recovery available to her creditors. This motive weighs against a finding of innocent mistake or inadvertence. *See, e.g.*, *Caviness*, 2007 U.S. Dist. LEXIS 32696 at *39

1   (facts and circumstances of case contradicted plaintiff's contentions of lack of motive for concealment

2   and claim of inadvertence; "By failing to list the EEO claims on his bankruptcy schedules, plaintiff

3   deceived his creditors, the bankruptcy trustee, and the bankruptcy court, all of whom relied on plaintiff's

4   petition and schedules to determine what action, if any, they would take in the bankruptcy proceedings.

5   Plaintiff … avoided collection efforts that might otherwise have been made by his creditors, and

6   prevented creditors from obtaining an interest in the administrative claims that plaintiff actively pursued

7   during the bankruptcy proceedings and afterward."); *Arruda*, 2007 U.S. Dist. LEXIS 16519, at *16-17

8   ("Plaintiffs clearly had knowledge of undisclosed facts concerning their potential claims, and the

9   possibility of receiving bankruptcy protection while at the same time asserting those claims supplied a

10  motive to conceal them."); *Wietecha*, 2006 U.S. Dist. LEXIS 44562 at *12 ("Plaintiff would gain

11  advantage by not disclosing the potential claims—receiving a discharge from his debt and then asserting

12  the claims for his own benefit.  Plaintiff plainly had a motive for concealment.").

13      In *Eastman*, 493 F.3d at 1159-60, the Tenth Circuit aptly pointed out that it is precisely this "ever

14  present" motive to conceal and unfairly benefit for which the doctrine of judicial estoppel exists: to

15  protect the integrity of the judicial system.  There the court affirmed the district court's finding that the

16  plaintiff was judicially estopped from asserting his personal injury claim, which he failed to disclose in

17  his Chapter 7 bankruptcy filing.  *Id.*  The plaintiff's nondisclosure and later pursuit of his claims

18  constituted "clearly inconsistent" positions and created "[t]he obvious 'perception' [] that [the plaintiff]

19  misled the bankruptcy court."  *Id.* at 1159.  Moreover, he had clear motive to conceal his claims, thus

20  undermining any claim of mistake or inadvertence:

21      [The debtor] too had a motive to sweep his personal injury action "under the rug" so he
        could obtain a discharge free and clear of his creditors.  The ever present motive to
22      conceal legal claims and reap the financial rewards undoubtedly is why so many of the
        cases applying judicial estoppel involve debtors-turned-plaintiffs who have failed to
23      disclose such claims in bankruptcy.  The doctrine of judicial estoppel serves to offset
        such motive, inducing debtors to be completely truthful in their bankruptcy disclosures.
24      We think [the plaintiff's] case is indistinguishable from the overwhelming majority of
        cases where debtors, who have failed to disclose legal claims to the bankruptcy court
25      without credible evidence of why they did so, have been judicially estopped from
        pursuing such claims subsequent to discharge. A large portion of debtors who file for
26      chapter 7 bankruptcy surely are as "unsophisticated" and "unschooled" as [the plaintiff],
        yet have little difficulty fully disclosing their financial condition to the bankruptcy court.
27      [His] assertion that he simply did not know better and his attorney "blew it" is
        insufficient to withstand application of the doctrine.

28

LEGAL_US_W # 75161371.1

1    *Id.* at 1159.  Here, Cline had ample reason to conceal her claim against Kmart, as she could only benefit

2    from asserting that she had no claim: she would gain by having her debts discharged and, through her

3    nondisclosure of her pending claims against Kmart, by shielding any proceeds from creditors.  Cline's

4    contention that, at the time she "filed [her] bankruptcy there would have been no way for [her] to

5    estimate the potential value, if any, of such a claim," ECF 325-1, Exh. 8, is both implausible and

6    irrelevant.  The Bankruptcy Code's disclosure requirements do not turn on whether a claim has accrued

7    with a determined value; the Code requires disclosure of all claims and assets—potential and realized.

8    *See* 11 U.S.C. §§ 521(a)(1), 541(a); *In re Coastal Plains*, 179 F.3d at 207-08.  In any event, Cline could

9    only benefit from asserting that she had no claim against Kmart, and she was well aware of the benefits

10   of having her debts fully discharged.

11   **V.    CONCLUSION**

12           Plaintiffs have failed to show any evidence, let alone substantial and probative evidence, that the

13   nature of the work they performed would reasonably permit the use of a seat; or what a suitable seat

14   would constitute within each of their register configurations.  Plaintiffs have thus failed to meet their

15   burden at summary judgment.

16           Furthermore, Cline's lack of standing to pursue her claim is undisputed, and the grounds

17   supporting the application of judicial estoppel remain unshaken by Cline's belated attempt to re-open

18   her bankruptcy case or disclaimer of what the record shows was her concealment of her claim against

19   Kmart from the bankruptcy court.

20           Accordingly, Kmart's motion for summary judgment should be granted in full.

21           Dated:  May 20, 2013.                  JEFFREY D. WOHL
                                                    ZACHARY P. HUTTON
22                                                  ELIZABETH J. MACGREGOR
                                                    MALAINA R. FREEDMAN
23                                                  PAUL HASTINGS LLP

24

25                                                  By:    /s/ Jeffrey D. Wohl
                                                           Jeffrey D. Wohl
26                                                  Attorneys for Defendant Kmart Corporation

27

28

LEGAL_US_W # 75161371.1